# EXHIBIT A

| '737 Patent – Claim 1 | Dow Jones's proposed construction & support | Ablaise's Proposed construction & support |
|---|---|---|
| *Displayed at a browsing device* | "visually represented on a screen of a browsing device"<br><br>Opening Br. at 18. | Ablaise does not provide a proposed construction for this element |
| *Storing executable functions* | "storing a universal family set of all available functions which may be used in order to generate portions of HTML code"[1]<br><br>Opening Br. at 19-23.<br><br>Support: All of the claims of the '737 patent are directed to the preferred embodiment and the specification teaches that an essential feature of the preferred embodiment is "storing a universal family set of all available functions which may be used in order to generate portions of HTML code." For example, the specification states, "the system as a whole includes a universal family set of all the available functions." '737 patent at col. 12, ll. 49-50. The specification also teaches that the "universal set of functions" enables the creation of various "functions strings," which are the heart of the preferred embodiment. See id. at col. 13, ll. 41-45. | "storing at least two executable functions"<br><br>Opening Br. at 17.<br><br>Support: Ablaise's proposed construction relies only on the words of the claim and ignores the specification. |

---

[1] Ablaise objects to Dow Jones's proffered construction because Ablaise believes the proffered instruction would mean that the claim requires "storing *every known function*." To clarify that Dow Jones never intended the claims of the '737 patent read on only those system/methods that store *every known function*, Dow Jones has modified its original proffered construction by inserting the word "family" between "universal" and "set" and by inserting after the word "function" the phrase "which may be used in order to generate portions of HTML code."

1

**EXHIBIT A**

| | | |
|---|---|---|
| *Function* | "A named set of function steps, at least one of which, when executed, creates a portion of code."<br><br>Opening Br. at 21-23.<br><br><u>Support</u>: An ordinary meaning of the term "function" is a named set of instructions. The applicant's use of the term function in the specification is consistent with this definition. Specifically, the specification teaches that the HTTP daemon creates a function string by identifying the required functions and assembling the function string by "<u>listing</u> the functions for sequential processing." '737 patent at col. 13, ll. 41-45. Because the specification teaches that a function string is assembled by listing the required functions for sequential processing, the specification implies that each particular function within the universal set has a name because a list, by definition, is a series of names.<br><br>In addition, the specification makes clear that a function must have at least one function step that creates a portion of code. '737 patent at col. 18, ll. 46-51; col. 12, ll. 41-42 and col. 13, ll. 3-7. | "An identifiable unit of computer instructions"<br><br>Opening Br. at 17<br><br><u>Support</u>: Ablaise asserts that the plain and ordinary meaning is "an identifiable unit of computer instructions." But Ablaise cites no authority for this proposition.<br><br>Ablaise attempts to support its definition by citing a single sentence in the specification. See Ablaise Br. at 17. That sentence states, "[a] format function of this type may be considered as the smallest unit of instructions for producing a portion of HTML code." Ablaise argues that, because the specification discloses that a function "may be considered as [a] unit of instructions," it is appropriate to define the term "function" to mean "an identifiable unit of computer instructions." However, it is a logical fallacy to assert that every identifiable unit of computer instructions is a function merely because every function "may be considered [a] unit of instructions" (<u>i.e.</u>, just because a cat can be considered an animal does not mean that all animals are cats). |

2

**EXHIBIT A**

| | | |
|---|---|---|
| *A request for specified content data* | **I**. "a request for specified content data, wherein the request was transmitted by a browsing device and includes a format identifier that is separate and distinct from the user identifier"<br><br>Opening Br. at 25-29.<br><br><u>Support</u>: The specification consistently teaches that the request for specified content data includes a format identifier, which is separate and distinct from a user identifier. For example, the specification states,<br><br>    the incoming URL [<u>i.e.</u>, request]… <u>will</u> include … an element identifying the type of formatting required [<u>i.e.</u>, a format identifier] [and] information relating to the user…. '737 patent at col. 14. ll. 3-6;<br><br>    [t]hus, the input URL <u>will</u> identify particular types of formatting and particular types of data …. Col. 15, ll. 63-64; and<br><br>    [a]t step 1203 a function string index [<u>i.e.</u>, format identifier] is identified, from the formatting information <u>present in the URL</u>." Col. 18, ll. 24-27.<br><br>The prosecution history confirms this construction. During prosecution the applicants distinguished a prior art reference by noting that the reference does not disclose "serving ... content ... <u>depending upon received requests incorporating respectively different format identifiers</u>." Rosenbloom Decl. Ex. M at 13 (emphasis added). | Ablaise does not provide a proposed construction for this element, but does not contest that the request is transmitted by a browsing device.<br><br>Opening Br. at 21. |

3

**EXHIBIT A**

|  | | |
|---|---|---|
|  | **II.** Dow Jones also asks this Court to construe "request ..." such that it does not read on "a request to retrieve and execute a specified file."<br><br>Reply Br. at 13.<br><br>Support: The applicants admitted in the specification that retrieving and executing a specified file in response to identifying a request was a well known feature found in the prior art. See '737 patent at col. 8, ll. 19-44. Furthermore, the applicants explicitly distinguished their system, which they termed an "on-line processing system," from this prior art and disparaged the prior art as being incapable of creating web pages on-the-fly. By distinguishing and criticizing this prior art technology, the applicants have disavowed the prior art from the scope of the patent's claims. | |
| *Receiving* | Dow Jones asks this Court to construe "receiving" such that it covers "acquiring something transmitted," but such that it does not read on "looking up in database" or "reading from a database."<br><br>Reply Br. at 14.<br><br>Support: The specification repeatedly uses the term receiving to mean "acquiring something transmitted." See '737 patent at col. 5, ll. 34-35 ("Preferably, viewable data is read from conventional databases in response to a URL being received"); Col. 3, ll. 20-22 ("Thus, a browser is an application capable of interpreting and displaying documents received in HTML"); and col. 7, ll. 44-45 ("A request from a browsing client would be received from the Internet provider."). | Ablaise asks this Court to construe "receiving" to encompass "looking up in a memory or database."<br><br>Opening Br. at 23.<br><br>Support: Ablaise bases its construction of "receiving" on its proposed construction of "format identifier," which it proposes to mean "a type of formatting specified by a user" (i.e., "user preference information"), and on the fact that the specification teaches building a web page on-the-fly based on user preference information [i.e., a format identifier according to Ablaise's construction] read from a database. |

4

**EXHIBIT A**

| | | |
|---|---|---|
| | Support for construing "receiving" such that it does not read on "looking up" or "reading" is found in the language of the claim itself and the specification. With respect to the claim itself, claim 1 requires: (1) "reading user information" and (2) "receiving format identifiers." Accordingly, there is a presumption that "receiving" means something other than "reading." With respect to the specification, the specification uses the verb "to read" to mean retrieving data, as from a database, and uses the verb "to receive" to mean to acquire something transmitted. See, e.g., '737 patent at col. 5, ll. 34-35 ("Preferably, viewable data <u>is read from conventional databases</u> in response to <u>a URL being received</u>") (emphasis added).<br><br>Accordingly, there is nothing in the intrinsic evidence to support construing "receiving format identifiers" to mean "reading or looking-up format identifiers from a database." | As discussed in Dow Jones's Reply Br. at 16, Ablaise's construction of "format identifier" is not supported by the intrinsic evidence.<br><br>Moreover, the claim explicitly requires "reading user preference information from [a] database" in addition to "receiving format identifiers." Accordingly, it makes no sense to construe "receiving format identifiers" broadly to include "reading user preference information from a database." |
| *Format Identifiers* | "more than one format identifier"<br><br>Opening Br. at 29-31.<br><br><u>Support</u>: The ordinary meaning of "format identifiers" is more than one format identifier. | Ablaise does not provide a proposed construction for this element |
| *Format identifier* | "an identifier that was included in the request for specified content data and that identifies the type of formatting required"<br><br>Opening Br. at 31-33.<br><br><u>Support</u>: As discussed above, the specification and prosecution history teach that format identifiers must be included in the request. Additionally, the claim 1 defines the term "format | "an identifier corresponding to a type of formatting specified by a user from at least two types of formatting available to the user for specified content data"<br><br>Opening Br. at 22-31.<br><br><u>Support</u>: Ablaise argues that Dow Jones's |

5

|  | identifier" to be an identifier identifying the type of formatting required. | proffered construction is incorrect because Ablaise contends that the specification discloses an embodiment in which "the format identifier is received from the user database, rather than from the URL sent by the browser." Br. at 24-25. Ablaise cites the '737 patent at col. 15, l. 6 – col. 16, l. 4 in support of its contention. But, this portion of the patent teaches the exact opposite of what Ablaise asserts. The cited portion of the patent states, "the input URL [i.e., the request] will identify particular types of formatting and particular types of data." Id. at col. 15, ll. 63-64 (emphasis added).<br><br>In support of its proffered construction, Ablaise contends that "a key purpose for the invention claimed in the '737 patent is to allow a user to choose between at least two available types of formatting [i.e., types of page layout, according to Ablaise's definition of formatting]." Ablaise Br. at 30. But, Ablaise provides no cite to any portion of the specification to support this assertion.<br><br>Ablaise also argues that, "the specification describes that users indicate preferences such as which type of formatting [i.e., page layout] they prefer." Id. (emphasis added). In support of this argument, Ablaise cites to a portion of the specification that states, "[a user may] specify preferences such that the system becomes more tailor-made and specific to that particular user." However, the '737 patent teaches that these user specified preferences are content preferences, not |
|---|---|---|

6

**EXHIBIT A**

|  |  | page layout preferences. See, e.g., '737 patent at col. 16, ll. 42-43; id. at col. 16, ll. 56-58; id. at col. 16, ll. 64-66. Nowhere does the specification teach a user selecting a page layout preference. |
|---|---|---|
| *Identifying* | "Establishing the identity of"<br><br>Reply Br. at 18.<br><br>Support: The ordinary meaning of "identifying" is "establishing the identify of." | "Corresponding to"<br><br>Opening Br. at 29<br><br>Support: Ablaise provides no support for its proposed construction |
| *Type of formatting required* | "indexed string of formatting functions" (or "indexed function string" for short)<br><br>Opening Br. at 33-36.<br><br>Support: The '737 patent teaches that, in response to a request received from a client, a web page is created on-the-fly by: (1) selecting an indexed function string that is identified by an identifier included in the request and then (2) executing the functions that comprise the function string. Col. 15, line 63-Col. 16, line 2; Col. 18, lines 24-31; Col. 11, lines 27-31; and Col. 20, lines 21-26.<br><br>Accordingly, when the specification states, "[t]hus, the input URL will identify particular types of formatting ….," it is clear that the term "types of formatting" is used synonymously with | "page layout"<br><br>Opening Br. at 31.<br><br>Support: Ablaise relies on only the testimony of its expert to support its proposed construction. Even though Ablaise contends that it is "undisputed that formatting in the '737 patent means page layout," Ablaise does not cite to any portion of the specification to support this assertion. |

7

**EXHIBIT A**

|  | the term "function string" because the specification clearly teaches that the input URL identifies a function string.<br><br>Additionally, the specification also teaches that the function string must be indexed.  See Col. 13, lines 18-23; Col. 13, lines 48-56; Col.13, lines 58-62; Col. 15, lines 19-31; and Col. 18, lines 24-28.  The specification also teaches that "indexing" the function strings is a key feature of the patents.  After the inventors described several different web-page personalization capabilities of their invention, the applicants stated: "[i]t can be appreciated that the possibilities are endless …. [t]his is all provided by the fact that the actual HTML pages supplied back to the users are generated "on-the-fly" <u>by indexing</u> locations within databases." Col. 17, line 66-Col. 18, line 2. |  |
|---|---|---|
| *Selecting* | "choosing from among several"<br><br>Opening Br. at 38.<br><br><u>Support</u>: "Choosing from among several" is the ordinary meaning of "selecting" and the specification does not redefine the term selecting. | Ablaise asks this Court to construe "selecting" to encompass "calling"<br><br>Opening Br. at 33-34.<br><br><u>Support</u>:  In support of its proposed construction, Ablaise cites the following passage from the specification:  "when a particular call is made for formatting signals ... the particular call identifies the index reference within the list of strings, resulting in the selected index being selected from the list and thereafter executed ....." |

8

**EXHIBIT A**

| | | |
|---|---|---|
| *A set of stored functions* | "a particular stored and indexed function string"<br><br>Opening Br. at 37-38.<br><br>Support: The claims of the '737 patent are specifically directed to the preferred embodiment.  See Dow Jones Reply Br. at 3, and the specification repeatedly emphasizes that, in the preferred embodiment, web pages are created on-the-fly by selecting an indexed function string and executing the selected function string.  '737 patent at col. 11, ll. 26-28("in response to a particular request being made, a string of functions are executed"); col. 15, ll. 64-67 ("[t]he formatting information for the URL will result in particular function strings being read from the [database] .... [t]hereafter, these functions are executed"); col. 13, ll. 5-7 ("any required output page may be generated by stringing formatting functions together"); col. 5, ll. 13-15 ("a particular function string, arranged to generate a HTML page, may be quickly sought and executed during on-line operation"); and col. 18, ll. 24-27 ("[a]t step 1203 a function string index is identified ... and a step 1204 the indexed function string is read from the string list store 1103").<br><br>As explained in Dow Jones's opening brief, the specification uses the term "a set of functions" only once and uses it synonymously with "function string."  See Dow Jones Br. at 38. Lastly, an essential feature of the preferred embodiment is that the system stores a plurality of indexed function strings and selects at least one such indexed function string in response to receiving a request from the web browser. Specifically, after the '737 patent describes several different web page personalization capabilities of the disclosed web server, it states: "[i]t can be appreciated that the possibilities | "one or more functions"<br><br>Opening Br. at 35<br><br>Support: Ablaise relies on only the ordinary meaning of the term "set" and ignores the teachings of the specification. |

9

| | | |
|---|---|---|
| | are endless …. [t]his is all provided by the fact that the actual HTML pages supplied back to the users are generated "on-the-fly" by indexing locations within databases." '737 patent at col. 17, l. 66-col. 18, l. 2 (emphasis added).  Thus, the specification teaches that indexing is a critical feature of the invention. | |
| Selecting a set of stored functions *in dependence upon a received format identifier and said read user information* | Dow Jones asks this Court to construe the element such that the selection is dependent on both the received format identifier and said read user information, which are separate and distinct.

Opening Br. at 38-39

Reply Br. at 21.

Support: The proposed construction follows from the plain language of the claim. | Ablaise asks this Court to construe the element such that it requires only that at least one function in the set is selected based in whole or in part on the read user information  and at least one function in the set is selected based in whole or in part on the received format identifier

Opening Br. at 33-34.

Support: Ablaise relies on the plain meaning of the claim. |
| *Formatting data* | "data which specifies the location of the content data within a page"

Opening Br. at 41

Support: Based on the language of claim 1, the term "formatting data" should be construed to mean "data which specifies the location of the content data within a page."  The preamble to claim 1 states that a page served by the method of claim 1 includes "formatting data which specifies locations of said [content data] within [the] page."  This proposed construction is confirmed by the prosecution history of the '737 patent.  In an amendment filed on December 16, 2003, | Ablaise agrees that "formatting data" should be limited to "data which specifies the location of the content data within a page," and further proposes to limit it to "markup language, such as HTML tags"

Opening Br. at 36-37.

Support: Ablaise contends, without citing any authority, that "markup language" is the plain and ordinary meaning for "formatting data."

Ablaise also contends that "the specification is |

10

|  | the applicants stated, "[t]he applicant's invention relates to a serving device that serves pages of viewable data comprising content data and formatting data. The content data, itself, comprises text and/or graphics and these are located within the page as specified by the formatting data." | clear that formatting data means HTML tags." Opening Br. at 40-41 (emphasis added); see also Id. at 40 ("data is combined with formatting data (i.e., HTML tags)") (emphasis in original). If this indeed is true, then the correct construction of "formatting data" is "HTML tags," rather than "markup language." |
|---|---|---|

| '530 Patent – Claim 1 | Dow Jones's proposed construction & support | Ablaise's Proposed construction & support |
|---|---|---|
| *Requests from browsing devices that define a request for specified viewable data* | **I.** Dow Jones asks this Court to construe this element such that the "request" includes an identifier identifying certain viewable data in addition to including formatting type identification data<br><br>Opening Br. at 43-44.<br><br>Support: The specification teaches that the request includes an identifier identifying certain viewable data and a separate identifier identifying a certain file structure. See '530 patent at col. 13, ll. 60-64 ("The URL will include an element identifying the data required [and] an element identifying the type of formatting required …."); and col. 15, ll. 53-59 ("Thus, the input URL will identify particular types of formatting and particular types of data.")<br><br>These statements from the specification indicate that the request from the browser includes data at least two elements: an element identifying viewable data and an index identifying types of formatting (i.e., file structure data). | Ablaise does not provide a proposed construction for this element |

|  | This is confirmed by the prosecution history.  See Response filed Feb. 3 1998 at 9 ("In addition to specifying viewable data, a request also includes formatting type data …."). (Rosenbloom Decl. Exh. Q); and Rosenbloom Decl. Exh. O at 8 (distinguishing the invention from the prior art by noting that in the prior art "[n]o data specific to formatting is included in the request.").  These statements were made by the applicant in distinguishing the claimed subject matter from prior art and, like the statement in the specification, indicate that the request includes data that is unique to formatting in addition to data that specifies certain viewable data.<br><br>**II.** Dow Jones also asks this Court to construe "request ..." such that it does not read on "a request to retrieve and execute a specified file."<br><br>Reply Br. at 13.<br><br>Support: The applicants admitted in the specification that retrieving and executing a specified file in response to identifying a request was a well known feature found in the prior art.  See '737 patent at col. 8, ll. 19-44.  Furthermore, the applicants explicitly distinguished their system, which they termed an "on-line processing system," from this prior art and disparaged the prior art as being incapable of creating web pages on-the-fly.  By distinguishing and criticizing this prior art technology, the applicants have disavowed the prior art from the scope of the patent's claims. |  |

**EXHIBIT A**

| | | |
|---|---|---|
| *Formatting type identification data* | "data identifying a type of formatting."<br><br>Reply Br. at 22.<br><br>Support: This proposed construction follows logically from the plain language of the words "formatting type identification data," and from the fact that the claim requires "selecting [a type] of formatting data in response to said formatting type identification data." Accordingly, the claim itself makes clear that "formatting type identification data" is "data identifying a type of formatting." | "data corresponding to a specified page format chosen from at least two page formats available to the requesting browsing device for specified viewable data"<br><br>Opening Br. at 38-39.<br><br>Support: Ablaise contends that "formatting type identification data" means "data corresponding to a specified page format" merely because the last element of claim 1 reads "… so as to display said specific viewable data in accordance with a first specified page format when a first type of formatting is selected …." |
| *Maintaining ...* formatting types of data | The correct construction of "maintaining" is "storing in a table"<br><br>Opening Br. at 44-45.<br><br>Reply Br. at 24.<br><br>Support:  The specification and prosecution history make clear that the system stores formatting data in a table.  First, the only specific structure identified in the specification for maintaining formatting type data is the "string list store 1103," which is a table within a relational database.  See Rosenbloom Decl. Exh. B at Col. 15, lines 9-12 ("Each of the databases and the string list store is relational."); and Chesnais Decl. ¶ 35.  Second, the applicants distinguished their alleged invention | Ablaise does not provide a proposed construction for this element.<br><br>Ablaise merely argues that it is wrong to construe "maintaining" to mean "storing in a table."  Once again Abliase asks this Court to ignore a statement made during prosecution distinguishing the claimed invention from the prior art. |

**EXHIBIT A**

|  | from a patent to Meske by noting, "data is not restricted to a single type … but is ... selected (from table 1103) during processing ...."  Rosenbloom Decl. Ex. R at 5 (emphasis added).  The public has a right to rely on this statement from the prosecution history.  Accordingly, when viewed in the context of the specification and prosecution history, the term "*maintaining* … formatting types of data" would be understood by the person of ordinary skill in the art to mean "*storing, in a table,* … formatting types of data" |  |
|---|---|---|
| *Formatting types of data* | "file structure data"

Opening Br. at 42-43.

Support: The term "formatting type data" is not found in the specification of the '530 patent.  Nevertheless, viewed in the context of the specification and the claim language itself, the person of ordinary skill in the art would understand "formatting types of data" to mean "file structure data."

The specification states:

   it is possible for the [web server] to respond to requests where the output HTML file will be produced "on the fly" in response to instructions identified as "on-line processing". When requested, the on-line processing will receive human viewable data from a database in combination with file structures from a file structure source. Thereafter, … the processing environment will process human viewable data in combination with file | "sets of mark-up tags, such as HTML tags"

Opening Br. at 40-41.

Support: Ablaise contends, without citing any authority, that "markup language" is the plain and ordinary meaning for "formatting data."

Ablaise also contends that "the specification is clear that formatting data means HTML tags." Opening Br. at 40-41 (emphasis added); see also Id. at 40 ("data is combined with formatting data (i.e., HTML tags)") (emphasis in original).  If this indeed is true, then the correct construction of "formatting data" is "HTML tags," rather than "markup language." |

14

**EXHIBIT A**

|  |  |  |
|---|---|---|
|  | structure data to produce HTML output files for the I/O device.<br>'530 patent at col. 8, ll 26-36 (emphasis added).<br><br>Claim 1 of the '530 patent refers to "combin[ing] said selected part of said content data with said specific one of said types of formatting data." Id. at col. 20, ll. 7-9. Accordingly, because the specification teaches that the invention relates to combining viewable data (i.e., content data) with "file structures" and the language of claim 1 recites combining viewable data with "said types of formatting data," the person of ordinary skill would conclude that "types of formatting data" means "file structure data." |  |
| *Selecting* | "choosing from among several"<br><br>Opening Br. at 38.<br><br>Support: "Choosing from among several" is the ordinary meaning of "selecting" and the specification does not redefine the term selecting. | Ablaise does not provide a proposed construction for this element |

15