## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DOW JONES & COMPANY, INC.

        Plaintiff,

    v.

ABLAISE LTD ("Ablaise")
and
GENERAL INVENTIONS
INSTITUTE A, INC.,     ("GIIA")

        Defendants.

**Civil Action No. 1:06CV01014**

**Judge James Robertson**

DOW JONES REUTERS
BUSINESS INTERACTIVE, LLC

        Plaintiff,

    v.

ABLAISE and GIIA

        Defendants.

**Civil Action No. 1:06CV01015**

**Judge James Robertson**

## DECLARATION OF PASCAL CHESNAIS

I, Pascal Chesnais, affirm and declare as follows:

**I.    Introduction**

1.    I am submitting this declaration on behalf of Dow Jones & Company, Inc. and Dow Jones Reuters Business Interactive, LLC (collectively hereinafter "Dow Jones") in conjunction with Dow Jones's Reply Memorandum Concerning Claim Construction in the above captioned cases.

**II.    Background and Experience**

2.    I received a Bachelor of Science degree in Computer Science from Hofstra University in 1985. I received a Master of Science degree in Visual Studies from the

Massachusetts Institute of Technology (hereinafter "MIT") in 1988 and a Doctor of Philosophy degree from MIT in Media Arts and Sciences in 2000. My *Curriculum Vitae* and my statement of prior testimony are attached (see Attachments A-1 and A-2)

3.    In 1986, I was a graduate research assistant in the MIT Media Laboratory Electronic Publishing Group where I worked on, among other projects, the "Network Plus" electronic news system, which provided for computer displays of relevant wire stories alongside a live broadcast of the evening news. In 1988, I became a Research Specialist and a member of MIT's sponsored research staff in the MIT Media Laboratory Movies of the Future / News in the Future group. During this time, I conducted research for "News in the Future" which focused on personalized news systems including user modeling, knowledge representation, news database servers, and presentation technologies. I led the FishWrap personalized news project, designing the core architecture and managing graduate and undergraduate students in its implementation (I was the thesis supervisor for the student whose May 1994 thesis on FishWrap, "Automated Restructuring of a Newspaper," attached as Ex. L to Rosenbloom Decl.) In 1995, I became a Research Assistant and doctoral candidate in the MIT Media Laboratory Electronic Publishing Group where I conducted research in advanced collaborative mobile messaging systems.

4.    Just prior to receiving my Ph.D., I co-founded MessageMachines, Inc. and led the technology development of the company, designing and implementing product prototypes and applications. While developing technologies for MessageMachines, I also consulted for the MIT Media Laboratory on intellectual property transfer.

5.    Following a successful sale of MessageMachines to NMS Communication in 2002, I was the founding member and Director of Research of Orange Labs Boston, a new facility of France Telecom Research and Development. Orange Labs Boston is now composed

2

of over 50 research and development engineers and I have led project teams developing prototypes of new mobile and fixed applications and services with themes including personalization systems, presence-enabled interactions, and multi-publication.

6.      I am an inventor of U.S. Pat. No. 5,005,559. I am also an inventor of pending patent applications as published in U.S. Pat. Appl. Pub. Nos. 2002/0087704, 2005/0227711, 2006/0024647, and 2006/0150119.

## III.    Summary of Opinions

7.      I have read and analyzed U.S. Patent No. 6,295,530 (the "'530 patent"), entitled "Internet service of differently formatted viewable data signals including commands for browser execution." I have read and analyzed U.S. Patent No. 6,961,737 (the "'737 patent"), entitled "Serving Signals." Furthermore, I have studied the relevant portions of the prosecution histories of the two patents. I understand that the Defendants, Ablaise Ltd. and General Inventions Institute A, Inc. (together hereinafter as "Ablaise"), contend that the '737 patent is infringed by Dow Jones's operating the websites www.wsj.com, www.marketwatch.com, and www.factiva.com, and that the '530 patent is infringed by Dow Jones's operating the websites www.wsj.com and www.marketwatch.com.

8.      I have also reviewed the claim construction proposed by Dow Jones in its Opening Brief Concerning Claim Construction and reiterated in its Reply Memorandum Concerning Claim Construction and the claim construction proposed by Ablaise in its Responsive Markman Brief in Support of its Proposed Claim Construction (the "Ablaise Brief").

9.      In summary, as explained below, it is my opinion that Dow Jones's proposed claim construction is correct in that it represents the meaning that the claims would have had to a

person of ordinary skill in the art at the time of the asserted invention in view of the specifications and file histories.

10.    I believe that a person of ordinary skill in the art at the time of the application would have been a degreed computer scientist with two or three years experience with internet protocols and about a year's experience with HTML and HTTP. Also, such a person could be one with five or more years' experience in computer coding and/or programming instead of a degree.

## IV.    Timeframe of alleged invention

11.    The application which issued as the '530 patent was filed in the United States Patent and Trademark Office on May 15, 1996 and claimed priority to an earlier application filed in the United Kingdom Patent Office on May 15, 1995. It is my understanding that May 15, 1995 is the earliest possible priority date for the '530 patent.

12.    The application which issued as the '737 patent was filed in the United States Patent and Trademark Office on August 3, 2001 and was filed as a continuation of the application which issued as the '530 patent. It is my understanding that May 15, 1995 is also the earliest possible priority date for the '737 patent.

13.    I observed that the written descriptions of the '737 and '530 patents are virtually identical, except for minor typographical errors. In discussing the descriptive portions of the patents below, I will refer only to the '737 patent for convenience.

## V.    Background

14.    At the time of the alleged invention, communication between web browsers and web servers was according to the Hypertext Transfer Protocol (HTTP) version 0.9 or, then in development, version 1.0. These versions of HTTP were what is known as "stateless." Stateless

means that a server processes each request for a web document or resource independently of other requests. If, for example, a user identity was germane to the requests, the user identity would have to be provided with each request.

## VI.    Ablaise's contentions and the prior art

15.    In studying the "background of the invention" section of the patents, I came to the conclusion that the applicants had an incorrect view of the innovations taking place on the World-Wide-Web. The applicants asserted that, as of the date of their patent application, web pages could only be created and updated "manually," incurring a significant number of man hours in the effort. '737 patent at col. 4, ll. 5-60. This is incorrect. Prior to May 15, 1995, it was well known how to create and update web pages automatically (i.e., on-the-fly).

16.    Ablaise's description of the prior art is also incorrect. Ablaise contends that, prior to the alleged invention, a "user could not define the look and format of the content on the web page," Ablaise Br. at 2, and that a web developer would have been required to use technical skills to create different pages for differently formatted pages containing the same data. Id. at 7. Ablaise further contends that users "could not send a request to a web sever to change either the content displayed or the layout." Id. at 6. These contentions are erroneous.

17.    For example, user definition of the look and format of the content on a web page is described by Charles Ames, in a 1994 article, whereby a user is presented with a web page form in which the user may "choose a 'listing' format of all open failure reports." Rosenbloom Decl. Ex. E at 901. Figure 4 of Exhibit E clearly depicts a drop-down menu list entitled "Report Format" in which the format "Listing" is currently selected. Id. at 902. One of ordinary skill in the art would understand that the selected "Report Format" would have been transmitted from the user's browser to the web server prototype along with information identifying the content

sought so that the web server could return a browser page, rendered "on-the-fly," id. at 903, with the requested content rendered in the format selected by the user. One of ordinary skill in the art would have understood that other requestable formats, e.g., tabular, would have been available in the drop-down menu list.

18.     Another example of a system that enabled a user to define the look and format of the content on the web page prior to the alleged invention of the '737 and '530 patents is described in Steve Putz's 1994 article entitled, "Interactive information services using World-Wide Web Hypertext." Rosenbloom Decl. Ex. D. Putz describes an Interactive Map Viewer which allows a user to select the content to be viewed and the look of the content (e.g., color versus monochrome). Id. at 275. Putz describes a system which generates web pages "on demand [i.e., on-the-fly], based on parameters encoded into the requested URL." Id. at 275-76.

## VII.     Terms from the '737 patent

19.     **"Storing executable functions."** This phrase would have been understood by the person of ordinary skill in the art at the time of the alleged invention to mean "storing a universal family set of all available functions which may be used in order to generate portions of HTML code." The '737 patent discloses two implementations for generating web pages on-the-fly. One implementation uses "templates" in which HTML code is held and which contains gaps "for the actual viewable data." '737 patent at col. 11, ll. 21-23. The other implementation involves provision of executable functions on the server such that "a string of functions are executed" in response to a particular request. Id. at col. 11, ll. 26-29. All of the claims of the '737 patent pertain to this second implementation. The '737 patent teaches that the "system as a whole includes a universal family set of all the available functions" and that function strings are assembled from the "universal family set of all the available functions." Id. at col. 12, ll. 49-50.

The teachings of the specification would lead one of ordinary skill in the art to the conclusion

that the universal family set of functions is an essential feature of the claimed embodiment.  Thus

one of ordinary skill in the art would interpret the element "storing executable functions" to

mean "storing a universal family set of all available functions which may be used in order to

generate portions of HTML code."

20.    **"Function."** This term would have been understood by the person of ordinary

skill in the art at the time of the alleged invention to mean "a named set of function steps, at least

one of which, when executed, creates a portion of code."  I understand that Ablaise contends that

the plain and ordinary meaning of "function" is "an identifiable unit of computer instructions."

This is incorrect as evidenced by the fact that a Google search of the phrase "identifiable unit of

computer instructions" yielded zero hits.  Attachment A-3 is a true and correct copy of the

Google results page.

21.    In addition to performing a Google search for the phrase "identifiable unit of

computer instructions," I performed several searches using variations of that phrase.

Specifically, I did a Google search using the following phrases:  (1) "identifiable unit of

instructions," (2) "identifiable set of computer instructions," (3) "identifiable set of instructions,"

(4) "identifiable group of computer instructions," (5) "identifiable unit of computer instructions,"

and (6) "identifiable group of instructions."  All of these searches yield zero hits with the

exception of search (3), which yielded only a single hit.  Attached are true and correct copies of

the Google results pages for each of the six searches (see Attachment A-4).

22.    **"A request for specified content data**."  This phrase would have been

understood by the person of ordinary skill in the art at the time of the alleged invention to mean

"a request for specified content data, wherein the request was transmitted by a browsing device

and includes a format identifier that is separate and distinct from the user identifier." A person of ordinary skill in the art would reach this interpretation in based on the language of the claim in view of the specification and statements made by the applicants during prosecution. The specification <u>repeatedly</u> states that a request will include a format identifier. During prosecution, the applicants reiterated this requirement, distinguishing the Wolff reference by telling the Examiner that Wolff does not "in any way teach[] serving the same text/graphic content in different viewable page formats – depending upon received requests incorporating respectively different format identifiers." See Rosenbloom Decl. Ex. M at 13.

23.     I understand that Ablaise contends that a request need not include a format identifier because, they contend, the user database may contain a user's format preference. Ablaise relies upon the specification, where it states that "the on-line processor 301 may also make use of information read from the user database in order to adjust the relationship between indexes (1106, 1109, 1110) and their associated function strings and data (1107, 1108, 1111)." '737 patent at col. 16, ll. 8-13. First, this statement says nothing about an identifier or format identifier or user format preference. Second, I believe this contention is erroneous because a relationship between an index and an associated function string cannot be "adjusted" without identifying the index/function string involved. The ability to make such an adjustment implies another source for identifying the index/function string involved. The specification, in the prior paragraph, teaches that the request (URL) will identify the index/function string. <u>Id.</u> at col. 15, ll. 63-65.

24.     Ablaise argues that it would be inconsistent to require that the identified request include a format identifiers because claim 1 requires receiving the format identifier "in response to" the request. In view of the specification, however, a person of ordinary skill in the art would

find no inconsistency. Figure 11 shows that a request is provided to and received by the "on-line processor" from the HTTP daemon after the request was received and identified by the HTTP daemon.

25.    Based on the specification, a person of ordinary skill in the art would also interpret the claimed "request for specified content data" such that it does not encompass a request for a predetermined file or a request to retrieve and execute a file identified in the request. The applicants admitted that such requests were in the prior art and disparaged the prior art by implying that the prior art could not generate web pages on-the-fly. Accordingly, it is clear that the applicants consider their alleged invention to be something other than generating web pages on-the-fly in response to a request for a predetermined file or a request to retrieve and execute a file identified in the request.

26.    **"Receiving."** This term would have been understood by a person of ordinary skill in the art at the time of the alleged invention to mean "acquiring something transmitted" and would not be interpreted to mean "reading" or "looking up," which Ablaise uses synonymously with "reading." A person of ordinary skill in the art would recognize that, because the claim recites both (1) "reading user preference information from [a] database" and (2) "receiving format identifiers," the applicant did not intend "receiving format identifiers" to have the same meaning as "reading user preference information from [a] database."

27.    **"Format Identifiers."** This term would have been understood by a person of ordinary skill in the art at the time of the alleged invention to have its ordinary plural meaning of "more than one format identifier."

28.    **"Format identifier"** This term would have been understood by a person of ordinary skill in the art at the time of the alleged invention to mean "an identifier that was

9

included in the request for specified content data and that identifies the type of formatting required." As discussed above in paragraph 22, the specification and the applicants' arguments during prosecution teach that format identifiers must be included in the request.

29.     **"Type of formatting required."** This phrase would have been understood by a person of ordinary skill in the art at the time of the alleged invention to have a meaning of "indexed string of formatting functions." The '737 patent teaches that in the claimed embodiment, a web page is created on-the-fly in response to a request received from a client by selecting an indexed function string that is identified by an identifier included in the request and then executing the function string. Accordingly, when the specification states, "[t]hus, the input URL will identify <u>particular types of formatting</u> ....," it is clear that the term "types of formatting" is used synonymously with the term "function string" because the specification clearly teaches that the input URL identifies a function string. Further, the specification teaches that the function string must be indexed because the specification makes clear that indexing is the key feature of the claimed invention.

30.     **"Selecting."** This term would have been understood by a person of ordinary skill in the art at the time of the alleged invention to have a meaning of "choosing from among several." This is the ordinary meaning and the specification does not provide a different meaning. Ablaise asserts "selecting" in reference to functions should mean "calling." Ablaise Br. at 33. This is erroneous. To "call" a function means to transfer control to the function, whereas to "select" a function means to choose the function from among other functions.

31.     **"A set of stored functions."** This phrase would have been understood by a person of ordinary skill in the art at the time of the alleged invention to have a meaning of "a particular stored and indexed function string." The skilled person would reach this interpretation

because the specification consistently and repeatedly teaches that in the claimed embodiment

web pages are generated on-the-fly by selecting a particular indexed function string from table of

indexed function strings and consistently and repeatedly teaches that indexing is a key feature of

the invention.

**VIII.   Terms from the '530 patent**

32.    **"Requests from browsing devices that define a request for specified viewable

data."**  For the reasons give above in paragraph 25, a person of ordinary skill in the art would

interpret the claimed "request" such that it does not encompass a request for a predetermined file

or a request to retrieve and execute a computer program identified in the request.

33.    **"Formatting type identification data."**  A person of ordinary skill in the art, at

the time of the alleged invention, would interpret the phrase "formatting type identification data"

to mean "data which identifies a type of formatting" because that is the plain and ordinary

meaning of the phrase.  Furthermore, the remainder of the claim and the specification do not

provide any reason to alter the plain and ordinary meaning.  A person of ordinary skill in the art

would not interpret "formatting type identification data" to encompass a user identifier, as

contended by Ablaise in its brief, Ablaise Br. at 39.

34.    **"Formatting types of data."**  This phrase would have not have been interpreted

by a person of ordinary skill in the art, at the time of the alleged invention, to mean "types of file

structure data."

35.    **"Maintaining."**  This term would have been interpreted by a person of ordinary

skill in the art, at the time of the alleged invention, to mean "storing in a table" because the

specification makes clear that a critical feature of the invention is that the formatting data is

stored in a table.  The only specific structure identified in the specification for maintaining

formatting type data is the "string list store 1103," which is described in the specification as being "relational" (e.g., a table) and is illustrated in FIG. 11 of the specification as being a table. Additionally, applicants distinguished the claimed invention from the prior art by noting that the prior art does not teach storing the formatting types of data in a table.

36.    I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _5 / 7 / 2007_                _____

                                           Pascal Chesnais

STATE OF ___MA_____  )
                     ) ss
COUNTY OF _Middlesex_  )

On this _7th_ date of May, 2007, before me, the undersigned notary public, personally appeared Pascal Chesnais, personally known to me – or – proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument and acknowledge to me that he executed the same in his authorized capacity, and that by his signature on the instrument to be the person, or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____

Notary's Signature

**The Commonwealth of Massachusetts**
On this _7th_ day of _May_ 20 _2007_,
before me, the undersigned notary public, personally appeared
_Pascal Chesnais_,
proved to me through satisfactory evidence of identification, which were _license_,
to be the person whose name is signed on the preceding or attached document and
acknowledged to me that he/she signed it voluntarily for its stated purpose.

Loreen E. LeJeune, Notary Public
My Commission Expires May 17, 2013

Attachment A-1

# Pascal Roger Chesnais

*Work Address*
France Telecom Research and
Development – Boston
175 Second Street
Cambridge, Massachusetts, 02142

*Home Address*
152 New Bridge Road
Sudbury, Massachusetts, 01776
pascal@alum.mit.edu

---

*Education*

**MASSACHUSETTS INSTITUTE OF TECHNOLOGY**                    *Cambridge, MA*
Doctor of Philosophy, Media Arts and Sciences, February 2000
Master of Science, Visual Studies, February 1988

**HOFSTRA UNIVERSITY**                    *Hempstead, NY*
Bachelor of Science, Computer Science, December 1985

---

*Experience*

**Orange / France Telecom Research and Development Boston**        *Cambridge, MA*
*Director of Research / Founding Member*                    *Apr. 2002–present*

Assisted in the creation of new Cambridge facility now composed of 60+ research and development engineers. Created laboratory's initial research plan. Identified industrial research partners, and recruited core research team.

As Director of Research lead project teams developing rapid prototypes of new mobile and fixed applications and services. Research themes include personalization systems, presence-enabled interactions, multimodality and multipublication. Launched research partnerships with major telecom technology providers. Responsible for project budget and planning. Listed as inventor in four of patent applications originating from this site.

- Led Context-aware Mobility project as part of France Telecom's Collaborative Real-time Enterprise R&D effort. Prototyped collaborative applications and services using contextual databases to provide users with rich interfaces to facilitate cooperation on mobile and fixed devices.
- Led Mobile Haptic Device project which allows visually impaired users participate in hand drawn communication. The device uses a novel mechanism to guide the user through 2D sketches and gives tactile feedback as the user passes over elements of the drawing.
- Led Multipublication project which included collaborative research effort with Motorola Advance Concepts Design group. The project involved the creation of a graphical interface to user's contact list as a means of accessing communication and other services.

**MIT Media Laboratory**                    *Cambridge, MA*
*Consultant*                    *Nov. 2001–Dec. 2001*

Created recommendations for facilitating intellectual property transfer to laboratory sponsors by creating a service modeled after successful open source software projects tools (such as SourceForge, Gforge, etc.).

**MessageMachines, Inc.**                    *Boston, MA*
*Chief Technology Officer/Co-founder*                    *Sep. 1999–Apr. 2002*

Founded company with fellow MIT alumnus and participated in all aspects of the company's growth until its sale to NMS Communication. Defined the technology focus of the company, developed core intellectual properties, designed and implemented prototypes of company products and applications. Set up and managed operational and support subsystems.

Additional accomplishments:

- Aided the development of the company's business plan and presented company vision to prospective investors. Raised seed capital of $885,000 from individual investors and raised $4.8M from institutional investors.
- Advised company on emerging technology opportunities and identified potential partners and customers.
- Was lead inventor on three provisional patent applications that have been filed with the US Patent and Trademark Office.

- Managed a successful field trial of company's cross-modal messaging server with the Associated Press to coordinate the activities of their staff and free-lance field photographers.
- Set up the company's IT department. Established the departments policies and procedures. Hired core support team, ultimately managing a team of 5 people. Deployed key servers (Sun, Linux, and Windows2000) and services (email, web,and code sharing).

**MIT Media Laboratory Electronic Publishing Group**               *Cambridge, MA*
*Research Assistant / doctoral candidate*                        *Jan. 1995–Sep. 1999*

Conducted research in advance collaborative mobile messaging systems included communication protocols and technologies.

Additional accomplishments:

- Led "Canard" community messaging system project, based on early two-way text pagers. Developed the core platform architecture which supported collaborative communication applications development.
- Negotiated an equipment grant from Motorola to provide a carrier grade two-way paging system for this social and technical experiment in cutting edge communication technologies.
- Received Motorola Fellowship. Nomintated for ComputerWorld-Smithsonian Innovation Award, case study now part of the Smithsonian Institute permanent research collection.

**MIT Media Laboratory Movies of the Future / News in the Future**       *Cambridge, MA*
*Research Specialist / MIT Sponsored Research Staff*                *Feb. 1988–Aug. 1995*

Conducted research centered on developing and exploiting new image processing techniques (multi-dimensional vector quantization and pyramid encoding) for the distribution of movies over low-bandwidth transmission channels. News in the Future focused personalized news systems: user modeling, knowledge representation, news database servers, and presentation technologies.

Additional accomplishments:

- Led EtherMovies, a digital cable television system using an existing computer network to model the adaptive streaming video system the group created.
- Led FishWrap a personalized news project and one of the first mass deployments of the "Daily Me" concept on the Web. Designed the core architecture, managed undergraduate and graduate students in its implementation. Negotiated the acquisition of content from the major news service.

**MIT Media Laboratory Electronic Publishing Group**               *Cambridge, MA*
*Research Assistant*                                            *Jan. 1986–Jan. 1988*

Worked as a graduate research assistant on numerous electronic publishing and multi-media technology projects.

Projects included: "Network Plus" an electronic news system where the computer displays relevant news wire stories alongside a live broadcast of the evening news; "Paperback movies", where a movie is compressed for storage on a CDROM and played back on a personal computer equipped with a hardware decoder designed by our team; and a computer enhanced arthroscopic surgery simulator for which we received a US patent (US Patent #5,005,559).

**Centre Mondial Informatique et Ressource Humaine**               *Paris, FRANCE*
*Attach de Recherche (Research Assistant)*
*Charge de Recherche (Senior Researcher)*       *Jun. 1982–Jan. 1984 and Summers 1984, 1985*

Responsible for managing a DECsystem-20 and Vax 11/780 computer systems. Maintained system software and trained users on how to use the systems. Led the adaption of the TOPS-20 operating system and supporting subsystems to a multi-lingual environment such that end users could choose their interface language (French or English).

**Rombex Productions**                                         *New York, NY*
*Production Assistant*                                    *Summers 1978, 1979, 1980*

Worked as a summer technical replacement. Participated in all facets of industrial video production work including advance video editing, film-to-tape transfer, and multi-format videotape duplication. Exposed to most videotape formats. Involved with the design and installation of video editing suites.

Publications  Pascal Chesnais, Joshua Randall, "TOMMY mobile haptic device", *France Telecom Research and Development Boston Design Booklet* (2006)

Pascal Chesnais, "A Framework for Designing Constructionist Approaches to Community-Centered Messaging", *MIT Doctor of Philosophy, Media Arts and Sciences* (2000)

Pascal Chesnais, "Canard: A framework for community messaging," *The First International Symposium on Wearable Computers* (1997)

Walter Bender, Pascal Chesnais, Sara Elo, Alan Shaw, "Enriching communities: Harbingers of news in the future," *IBM Systems Journal* Vol. 35, Nos. 3 and 4 (1996)

Pascal Chesnais, Matthew Mucklo, Jonathan Sheena, "The FishWrap Personalized News System," *IEEE Second International Workshop on Community Networking Integrating Multimedia Services to the Home* pp. 275–282 (1995)

Pascal Chesnais, "Reactions to the FishWrap: an Experimental On-line Personalized Newspaper," *MIT Media Laboratory Electronic Publishing Group Technical Memo* (1995)

Pascal Chesnais, Douglas Koen, "Strategies for Personal Dynamic Systems: News in the Future." *NeXTWorld Developer Conference* (1993)

Pascal Chesnais, "A Graphic/Photographic Arthroscopy Simulator," *MIT Master of Science Visual Studies* (1988)

Walter Bender, Pascal Chesnais, "Network Plus," *Imaging Applications in the Work World*, Ron Clouthier, Gary Starkweather, Andrew G. Tescher, Thomas Vogelsong, Editors, Proc. SPIE 900, 81–86 (1988)

Pascal Chesnais, Wendy Plesniak, "Color Coding Stereo Pairs for Non-Interlaced Displays," *Image Processing, Analysis, Measurement, and Quality*, Gary W. Hughes, Patrick E. Mantey, Bernice E. Rogowitz, Editors, Proc. SPIE 901, 114–118 (1988)

Patents  Ernesto Blanco, Pascal Chesnais, Phyllis Kristal and Andrew Lippman, "Video-graphic arthroscopy system," Massachusetts Institute of Technology, US Patent 5,005,559 April 9, 1991

Pascal Chesnais, Christopher Herot, Imran Qidwai, Joshua Randall, Kamal Ayad, John Ciarlante, "Systems and methods for routing messages to communications devices over a communications network," MessageMachines, US Patent Pending 20020087704, July 4, 2002

Jonathan Orwant, Joshua Randall, Pascal Chesnais, "Method and apparatus for creating, directing, storing and automatically delivering a message to an intended recipient upon arrival of a specified mobile object at a designated location," France Telecom, US Patent Pending 20050227711, October 13, 2005

Pascal Chesnais, Joshua Randall, "Method and apparatus for communicating graphical information to a visually impaired person using haptic feedback," France Telecom, US Patent Pending 20060024647, February 2, 2006

Pascal Chesnais, Sean Wheeler, "Method for interacting with automated information agents using conversational queries," France Telecom, US Patent Pending 20060150119, July 6, 2006

Attachment A-2

Statement of prior testimony:

N.A.

Attachment A-3

**pascal.chesnais@gmail.com** | Web History | My Account | Sign out

**Web**   Images   Video   News   Maps   more »

"identifiable unit of computer instructions"   ( Search )   Advanced Search
                                                             Preferences

New! View and manage your web history

# Web

Tip: Try removing quotes from your search to get more results.

Sponsored Links

**Have Computer Problems?**
Immediate Troubleshooting Solutions
Instant Diagnosis! Optimize Your PC
www.Support.com

**Computer Instruction**
Earn a Computer Networking diploma
in less than 2 years. Find out how.
chubbinstitute.edu/networking
Pennsylvania

Your search - **"identifiable unit of computer instructions"** - did not match any documents.

Suggestions:

- Make sure all words are spelled correctly.
- Try different keywords.
- Try more general keywords.

Google Home - Advertising Programs - Business Solutions - About Google

©2007 Google

Attachment A-4

pascal.chesnais@gmail.com | Web History | My Account | Sign out

**Web**    Images    Video    News    Maps    more »

"identifiable unit of instructions"    ( Search )    Advanced Search
Preferences

New! View and manage your web history

# Web

Tip: Try removing quotes from your search to get more results.

Your search - **"identifiable unit of instructions"** - did not match any documents.

Suggestions:

- Make sure all words are spelled correctly.
- Try different keywords.
- Try more general keywords.

---

Google Home - Advertising Programs - Business Solutions - About Google

©2007 Google

pascal.chesnais@gmail.com | Web History | My Account | Sign out

**Web**    Images    Video    News    Maps    **more »**

| "identifiable set of computer instructions" | ( Search ) | Advanced Search Preferences |

New! View and manage your web history

# Web

Tip: Try removing quotes from your search to get more results.

Your search - **"identifiable set of computer instructions"** - did not match any documents.

Suggestions:

- Make sure all words are spelled correctly.
- Try different keywords.
- Try more general keywords.

Google Home - Advertising Programs - Business Solutions - About Google

©2007 Google

**pascal.chesnais@gmail.com** | Web History | My Account | Sign out

**Web**   Images   Video   News   Maps   **more »**

"identifiable set of instructions"        ( Search )   Advanced Search
                                                       Preferences

New! View and manage your web history

# Web

Results **1** - **1** of about **2** for **"identifiable set of instructions"**. (**0.35** seconds)

Tip: Try removing quotes from your search to get more results.

## ISA Comprehensive Dictionary of M&C

A discrete **identifiable set of instructions** usually handled as a unit. programming system
A system consisting of a programming language and a computer ...
www.elektroda.net/pomoce/ISA/define-p.html - 165k - Cached - Similar pages

"identifiable set of instructions"        ( Search )

Search within results | Language Tools | Search Tips | Dissatisfied? Help us improve

Google Home - Advertising Programs - Business Solutions - About Google

©2007 Google

**pascal.chesnais@gmail.com** | Web History | My Account | Sign out

**Web**   Images   Video   News   Maps   **more »**

"identifiable group of computer instructions"        ( Search )   Advanced Search
                                                                 Preferences

New! View and manage your web history

## Web

Tip: Try removing quotes from your search to get more results.

Your search - **"identifiable group of computer instructions"** - did not
match any documents.

Suggestions:

- Make sure all words are spelled correctly.
- Try different keywords.
- Try more general keywords.

---

Google Home - Advertising Programs - Business Solutions - About Google

©2007 Google

pascal.chesnais@gmail.com | Web History | My Account | Sign out

**Web**   Images   Video   News   Maps   **more »**

"identifiable unit of computer instructions"    ( Search )   Advanced Search
Preferences

New! View and manage your web history

# Web

Tip: Try removing quotes from your search to get more results.

Your search - **"identifiable unit of computer instructions"** - did not match
any documents.

Suggestions:

- Make sure all words are spelled correctly.
- Try different keywords.
- Try more general keywords.

---

Google Home - Advertising Programs - Business Solutions - About Google

©2007 Google

**pascal.chesnais@gmail.com** | Web History | My Account | Sign out

**Web**    Images    Video    News    Maps    **more »**

"identifiable group of instructions"        ( Search )    Advanced Search
                                                           Preferences

New! View and manage your web history

# Web

Tip: Try removing quotes from your search to get more results.

Your search - **"identifiable group of instructions"** - did not match any documents.

Suggestions:

- Make sure all words are spelled correctly.
- Try different keywords.
- Try more general keywords.

---

Google Home - Advertising Programs - Business Solutions - About Google

©2007 Google