# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOW JONES & COMPANY, INC.<br>200 Liberty Street<br>New York, New York 10281,<br><br>          Plaintiff,<br><br>v.<br><br>ABLAISE LTD. ("Ablaise")<br>40 Queen Anne Street<br>London W1G 9EL<br>United Kingdom<br><br>and<br><br>GENERAL INVENTIONS<br>INSTITUTE A, INC., ("GIIA")<br>Craigmuir Chambers<br>P.O. Box 71<br>Town Road<br>Tortola, British Virgin Islands,<br><br>          Defendants. | **Civil Action No. 1:06CV01014**<br><br>**Judge James Robertson**<br><br><br>**ORAL HEARING REQUESTED** |
| DOW JONES REUTERS<br>BUSINESS INTERACTIVE, LLC<br>200 Library Street<br>New York, New York 10281,<br><br>          Plaintiff,<br><br>v.<br><br>ABLAISE and GIIA,<br><br>          Defendants. | **Civil Action No. 1:06CV01015**<br><br>**Judge James Robertson**<br><br><br>**ORAL HEARING REQUESTED** |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

MP3 20253768.1

**Introduction**

Ablaise has offered Dow an inspection of all of its ESI at Dow's expense and has met all of its document production obligations under the recent rules for preservation and production of electronically stored information (ESI) —and offered to do more. Even before a duty to preserve arose, Ablaise preserved ESI from the 1994 to 1999 time period—largely through back-up tapes. This historic data raises a straightforward two-tier analysis under Rule 26 that must be resolved quickly to preserve this Court's scheduling order. The first tier of the analysis is whether the historic media is reasonably accessible. The answer is a clear-cut "no" for the bulk of the data, which is stored in disaster recovery back-up tapes. The second tier is whether Dow Jones Company and Dow Jones Business Reuters Inc. (collectively "Dow Jones") have met their burden of showing good cause for discovery of the historic media.

As Ablaise shows below, due to the age and the form of the media, this ESI is not reasonably accessible. Ablaise would have to spend over $200,000 to restore the ESI at issue, and significantly more to review for privilege, responsiveness, and personal information. The restoration for everything would take over a month. While this renders the ESI presumptively not discoverable under the new amendment to Federal Rule of Civil Procedure 26(b)(2)(B), Ablaise, nonetheless, identified that this ESI is not reasonably accessible and offered to make this ESI available to Dow Jones at Dow Jones' cost. Dow Jones refused this offer. Instead, Dow Jones now seeks to run up needless and extreme costs and delay Ablaise from trying this case to a jury on the merits. In doing so, Dow Jones is searching for a needle in a haystack—a needle that Dow Jones has no reason to believe exists. Ablaise, while under no obligation to do so, is willing to allow Dow Jones to search for this illusory needle, but at Dow Jones' cost. This result is both fair and consistent with the law. Dow Jones' motion to compel, therefore, should be

denied in its entirety.

## Factual Background

**I.     Ablaise Has Preserved and Retained Point4 and Personal Media from 1994-1999.**

Declaratory Judgement defendant Ablaise is a relatively new company, founded in 2002. Ritchie Decl. ¶ 8. The patents-in-suit, however, date back to 1994. In October 1994, inventors Andrew Ritchie and Jonathan Bradshaw, along with two others, co-founded a web-development company called Point4 Consulting Ltd. (Point4). Id. ¶ 2. During the winter of 1994, Ritchie and Bradshaw worked on Ritchie's idea of dynamically creating web pages that included both content and formatting corresponding to user preferences. Id. ¶ 3. The inventors filed a U.K. patent application on May 15, 1995. Id. This patent application is the ultimate parent of U.S. Patents 6,961,737 and 6,295,530, which are at issue in this case. Id.

Despite Point4's advancement of the internet, Point4 encountered economic challenges. Id. ¶ 4. For the first two years, in fact, Point4 operated out of Ritchie's and Bradshaw's spare bedrooms. Id. When Point4 finally leased office space, Point4 could not even afford desks. Id. Point4 directors often went months without a salary and from time-to-time relied upon family and friends to keep the business solvent. Id. Within this context, Point4's equipment—and particularly its computer equipment—overlapped with Ritchie's and Bradshaw's personal property. Id. ¶ 5. A computer used for Point4 business, for example, was the personal property of Ritchie or Bradshaw, or another Point4 director. Id.

Point4 maintained disaster-recovery back up tapes throughout its existence. Id. ¶ 6. Point4 ultimately became a successful company, and was acquired in 1999 by Nettec. Id. ¶ 7. Following the purchase of Point4, both Ritchie and Bradshaw were Nettec employees. Id. In 2002 and 2003, respectively, Ritchie and Bradshaw left Nettec to form Ablaise. Id. ¶ 8. Ablaise

has preserved and controls some of the back-up tapes that have Point4 information on them as well as additional media from the Point4 era.  Id.

Ablaise estimates that it has approximately nine terabytes of data on its preserved media collection.  Id. ¶ 18.  One terabyte equals 1,000 gigabytes.  Id.  The nine terabytes are made up of the following media: 160 back-up tapes, 3 laptops, 2 tower computers, 5 hard drives/disks,[1] and 2 CDs.[2]  Ritchie Decl. ¶ 10; Dearsley Decl. ¶ 4.  The 160 back-up tapes are comprised of the following: 121 DLT4 tapes, 38 DAT tapes, and 1 SDLT tape.  Ritchie Decl. ¶ 11; Dearsley Decl. ¶ 4.  All of these tapes are disaster recovery back up tapes.  Ritchie Decl. ¶ 11.  None of the tapes are categorized or indexed chronologically.  Ritchie Decl. ¶ 11; Dearsley Decl. ¶ 4.  The back-up tapes are believed to have information ranging from 1994 to 1999, including data relating to Point4 as well as personal information of Point4 directors.  Ritchie Decl. ¶ 16.

The three laptops are believed to date back to 1994 and 1995.  Ritchie Decl. ¶ 12.  One laptop is an Apple Macintosh that Bradshaw used.  Id.  The second laptop is a Olivetti PT-AT-60, which was Ritchie's laptop.  Id.  The drive on this laptop spins, but it cannot be accessed.  Id.  The third laptop, a digital p7x, was re-formatted sometime around 1996 or 1997 with Windows '95.  Id.  Any data that existed on the laptop before the re-formatting occurred is no longer available as a result of the re-formatting.  Id.

Ablaise also has five additional hard drives.  Id. ¶ 13.  These hard drives were removed from old personal computers.[3]  Id.  The dates for these hard drives range from 1990 to 1997, with some of the dates for the drives unknown.  Id.  The two tower computers contain two hard drives each, totaling four hard drives.  Id. ¶ 14.  In total, therefore, there are 12 hard drives (the five

---

[1] The terms "hard disk" and "hard drive" are interchangeable.  For uniformity, Ablaise will use "hard drive."
[2] Ablaise has learned that the 2 CDs can be imaged without undue burden or expense.  Ablaise will, therefore, review this media and produce any responsive, non-privileged documents.
[3] At least two of the hard drives are from the Sun Workstations referenced in Dow Jones' motion.  See Ritchie Decl. ¶ 13.

removed hard drives, four hard drives in two tower computers, and one hard drive in each of three laptops). Id. ¶ 15. All of these hard drives are more than 10 years old. Id.

Ablaise has carefully handled this media because of its historical nature—some of it dating back 13 years. Id. ¶ 19. Also due to its historical nature, however, the media cannot be safely accessed. See infra § II; see generally Dearsley Decl. Ablaise cannot simply look at the disaster back up tapes at all, which must first be restored by a vendor at significant cost, and which is not indexed in any fashion. Ritchie Decl. ¶ 11; Dearsley Decl. ¶ 5. And the remaining media due to its age cannot be reviewed without a risk of damaging or losing the data. see generally Dearsley Decl. Contrary to Dow Jones' suggestion, therefore, Ablaise does not know what information it has or where it would be. Ritchie Decl. ¶ 17.

**II.    Kroll OnTrack U.K. Opines that This Media Must Be Restored.**

Ablaise consulted with a data restoration vendor, Kroll OnTrack (Kroll), in the U.K. regarding Ablaise's collection of aged, preserved media. Dearsley Decl. ¶ 3. By way of background, Kroll is a worldwide leader in data recovery services. Id. ¶ 2. Kroll, moreover, is widely used to assist in litigation regarding electronic document recovery, restoration, and production issues. Id. Kroll is equipped with vanguard computer forensic engineers and cutting-edge equipment and resources. Id.

Ablaise consulted with Kroll on two separate occasions. Id. ¶ 3. The first, preliminary consultation occurred in September 2007. Id. The second, formal consultation took place following the filing of this motion to compel. Id. As part of the consultation, a Kroll consultant physically reviewed the media at Ritchie's house. Id. ¶ 4. Kroll provided the following opinions and estimates.

The back-up tapes, by their nature, are not accessible. Id. ¶ 5; Ritchie Decl. ¶ 11. To

- 5 -

access the data on the tapes, data must be extracted from the tapes professionally. Dearsley Decl. ¶ 5. Kroll has this expertise and offers this service, but explains that data extraction from back-up tapes is an extremely labor intensive process. Id. The cost of data extraction is £600/$1,200[4] per tape. Id. Extracting data from all 160 back-up tapes, therefore, would cost £96,000/$192,000. Id. Kroll estimates that this process would take 20-22 business days. Id.

Kroll opines that the remaining media—specifically the 12 hard drives—is at risk of being lost or damaged if it is accessed in its current form due to the age of the media. Id. ¶ 6. Specifically, any media that has gone years without power and is then accessed raises the grave risk that the data will be lost or damaged. Id. ¶ 6. Kroll's professional opinion is that the hard drives must be forensically imaged, which would extract any active data. Id.[5] Due to the historic nature of the hard drives, taking a forensic image is the necessary approach to best protect the data on the historic hard drives. See id. Taking forensic image of a hard drive, nonetheless, is a complex and labor intensive process, which requires professional hardware, software, and expertise. Id. ¶ 7.

The cost for a forensic image is £450/$900 per hard drive. Id. ¶ 8. To forensically image all 12 hard drives, thus, would cost £5,400/$10,800. Id. This process takes 6-8 business days. Id. To recover any deleted data, such as in the case of the reformatted laptop, however, the cost for a forensic image is £1,250/$2,500 per hard drive. Id. ¶ 9. To recover all the deleted data from 12 hard drives, therefore, would cost £15,000/$30,000. Id. This process takes 8-10 business days. Id.

---

[4] Kroll provided the estimate in pounds. The dollar estimate is based on a 1:2 ratio between pounds and dollars.
[5] One of the 12 hard drives has been imaged by Ablaise before Kroll advised Ablaise that these hard drives should not be accessed unless by professionals, and that the hard drives had to be forensically imaged. Similarly, some data from a second hard drive has also been copied. Ablaise will, therefore, review and produce any responsive, non-privileged documents from this image and copied data. Kroll, nonetheless, opines that this hard drive should be professionally, forensically restored for accuracy and protection of the data on the hard drive. Dearsley Decl. ¶ 6.

Kroll includes the caveat, furthermore, that it cannot guarantee that all data can be imaged and recovered.  Id. ¶ 10.  This is particularly the case with historic, aged media, which has an increased risk of physical damage.  Id.  Kroll will not know, however, if the actual drives can be successfully forensically imaged without making an attempt.  Id.  The cost estimates, additionally, could increase if the data is not stored in a usable format.

### III. Ablaise Identified This Media As Inaccessible and Explained This to Dow Jones.

#### A. Ablaise Identified The Media As "Not Reasonably Accessible" In Its Discovery Responses.

Ablaise properly responded to Dow Jones Requests for Production of Documents.  Whenever a request called for documents that may fall within the 1994-1999 time period, Ablaise indicated that it may have responsive documents.[6]  See, e.g., Lieberman Decl., Exh. D at 6-7 (Docket No. 42-6).  But Ablaise explained that it would not produce documents that were not reasonably accessible.  Id.  Ablaise identified the media forms that were not reasonably accessible.  Id.  And Ablaise explained that the media "needed to be restored due to its age."  Id.  Because the of the "cost, burden, and time," and because Ablaise could not know if it would find any responsive information, Ablaise would not review and produce this data.  Id.  But Ablaise would make it available for inspection, subject to a protocol to protect privileged and personal

---

[6] Specifically, Ablaise has informed Dow as follows. Ablaise has informed Dow that it will not provide copies of documents in an electronically stored format that are not reasonably accessible, but Ablaise will make this information available for inspection. Ablaise has retained documents that may be responsive to this request. Ablaise does not represent that any additional responsive documents actually exist. These documents are stored in various electronic media forms.  The media forms include: personal computers, back-up tapes, hard drives, CDs, and floppy disks.  Before this information can be reviewed, however, it will need to be restored due to its age.  Ablaise estimates that the electronically stored information is approximately nine terabytes of data. Based on Ablaise's investigation of the cost, burden and time required to restore this data and review it, Ablaise does not intend to restore and review the data at this time.  The only way to determine whether any documents are relevant to this request is to restore the information and review it.  In accordance with Federal Rule of Civil Procedure 34, therefore, Ablaise will make this stored information available for inspection at a mutually agreed time and location in the U.K. The inspection will be contingent on Dow Jones employing a procedure that protects the integrity of the stored information, as well as a protocol allowing for Ablaise to protect attorney-client privileged information, information protected by the work product doctrine, and screening and/or segregating personal information. See, e.g., Lieberman Decl., Exh. D at 6-7 (Docket No. 42-6).

information, and the integrity of data.  Id.

Notably, Dow Jones requested to inspect any computer hard drive the inventors used from December 1, 1994 to May 15, 1995.  Id. at 30 (Request 27).  Ablaise responded that it would make available the hard drives that it has, subject to a protocol for restoring the data, protecting the integrity of the information, and protecting privileged and personal information.  Id. at 30-31.  It is not clear whether Dow Jones' Request No. 27 is subject to this motion.  Dow Jones, nonetheless, has not contacted Ablaise to discuss setting up a time to inspect the hard drives.  Holdreith Decl. ¶ 8.

### B. Ablaise Explained to Dow Jones That The Media Was Inaccessible During The Meet and Confer.

Ablaise attempted to discuss the media and inaccessibility of it with Dow Jones on November 16, 2007.  Id. ¶ 2.  Ablaise explained to Dow Jones that Ablaise could not simply review the data and that the data was not catalogued, indexed, or organized in any way.  Id. ¶ 3.  Ablaise explained that it did not know what information it had or where it could be found.  Id. ¶ 5. Ablaise also explained that the remaining media could not be accessed without the risk of destroying or damaging the media.  Id. ¶ 4.  This raised particular concerns for Ablaise because if any of the media became damaged, Ablaise could face spoliation issues in this and other ongoing cases.  Id.  Ablaise, nonetheless, reiterated its position that Ablaise is not hiding any data or information, as Dow Jones was free to inspect all of the media.  Id. ¶ 6.  Dow Jones would, however, have to pay the costs to restore and protect the information, as well as, agree to a protocol for segregating privileged or personal information.  Id.

Contrary to Dow Jones' protestations in its motion, Ablaise did not and has not mandated that Dow Jones travel to the U.K. and review the data there.  Id. ¶ 7.  Ablaise suggested that Dow Jones was welcome to retain a consultant to copy the data—after restoration—and review the

data in the States.  Id.  Ablaise would not, however, transport the media to the United States, as that would risk the media becoming damaged en route.  Id.

Ablaise also addressed Dow Jones' primary relevance argument.  Ablaise stated it would not seek to swear behind the U.K. filing date.  Id. ¶ 8.  In other words, it would not rely on any documents to prove an earlier date of invention prior to any prior art Dow Jones may assert.  The critical date, therefore, would be May 15, 1995, the day Ritchie and Bradshaw filed for the U.K. patent.

## **Argument**

The Rules set forth a simple analysis.  ESI that is not reasonably accessible due to undue burden or cost is presumptively not discoverable.  Fed. R. Civ. P. 26(b)(2)(B).  That presumption can only be rebutted if Dow Jones meets its burden and proves good cause for the discovery.  Id.  Because Ablaise has shown that its ESI from 1994-1999 is not reasonably accessible, and because Dow Jones has failed to attempt to show, let alone establish, good cause, this Court should deny Dow Jones' motion in full and enter a protective order protecting Ablaise from this burdensome and expensive discovery.  See Fed. R. Civ. P. 37(a)(4)(B) (allowing a denial of a motion to compel to be converted into a protective order for prevailing party).  In addition to the new rule specifically addressing ESI, traditional limits on discovery also weigh in favor of protecting Ablaise from the undue and costly burden Dow Jones is seeking to impose.  Rule 26(b)(2)(C), therefore, is a separate ground for denying Dow Jones' motion.

**I.    Ablaise Has No Duty to Restore and Produce the ESI At Issue Because the Media Is Not Reasonably Accessible and Dow Jones Has Failed to Prove Good Cause.**

New Rule 26(b)(2)(B) provides a two-tier analysis.  If Ablaise shows that ESI is not reasonably accessible,[7] then the ESI is presumptively not discoverable and Ablaise has no

---

[7] The Federal Rules of Civil Procedure explain that this showing is appropriately made in response to a motion to

obligation to restore, review, or produce it. The ESI only becomes discoverable if Dow Jones proves good cause.

### A. The Back-up Tapes and Hard Drives Require An Undue Burden and Cost to Restore to A Reasonably Accessible Format.

#### 1. Disaster recovery back-up tapes are per se inaccessible.

Disaster recovery back-up tapes are the paradigmatic example of "not reasonably accessible due to undue burden or cost." The Advisory Committee, case law, and commentary all agree. The Advisory Committee, for example, notes that "back-up tapes intended for disaster recovery purposes that are often not indexed, organized, or susceptible to electronic searching" is an example from current technology that is not reasonably accessible. Exh. A, Adv. Cmt., at 42. The Sedona Conference also agrees. See Exh. B, Principle 2.c., at 18; Principle 8.b., at 46. The court in Zubulake v. UBS Warburg LLC, cited by Dow Jones, also explained that "Back-up tapes must be restored using a process similar to that previously described, fragmented data must be de-fragmented, and erased data must be reconstructed, all before the data is usable. That makes such data inaccessible." 217 F.R.D. 309, 320 (S.D.N.Y. 2003).

Despite this unequivocal legal authority, Dow Jones contends that there is "no reason why [Ablaise] cannot insert any of its back up tapes into a tape drive and review the contents of the tape for responsive ESI." Dow Mem. of Law, at 11. But this Court recognizes the inherent impossibility of this suggestion.

> The frustration of electronic discovery as it relates to backup tapes is that backup tapes collect information indiscriminately, regardless of topic. One, therefore, cannot reasonably predict that information is likely to be on a particular tape. This is unlike the more traditional type of discovery

---

compel. See Fed. R. Civ. P. 26(b)(2)(B) ("**On motion to compel discovery** or for a protective order, the party from whom discovery is sought **must show** that the information is not reasonably accessible because of undue cost or burden.") (emphasis added). Dow Jones' assertion, therefore, that Ablaise has not invoked Rule 26(b)(2)(B) by not making the inaccessibility "showing" in Ablaise's discovery responses is inapposite and off-base. See Dow Jones' Mem. of Law, at 7.

> in which one can predict that certain information would be in a particular folder because the folders in a particular file drawer are arranged alphabetically by subject matter or by author.

McPeek v. Ashcroft, 212 F.R.D. 33, 35 (D.D.C. 2003). Ablaise, furthermore, has explained to Dow's counsel repeatedly that the back-up tapes are disaster recovery tapes and, as addressed by Zubulake, neither Ablaise, nor anyone, can simply view the data on the tapes by putting them in a "tape drive."

In addition to the technical inaccessibility, the cost associated with extracting the data off the tapes into a viewable and usable format is substantial. The cost to extract the data from all 160 tapes, before Ablaise could even begin to review the data, is $192,000. It is precisely this undue burden and cost that Rule 26(b)(2)(B) protects a producing party from bearing.

### 2. Historic Hard Drives

The 10 historic hard drives are similarly not reasonably accessible. Unlike the back-up tapes which have been often addressed by courts, the accessibility of historic hard drives presents an unaddressed issue to this Court.[8] The professional opinion and advice Ablaise received from Kroll is not to power-up and access any of these hard drives, because of the risk of losing all the data. These hard drives are not, therefore, "reasonably accessible." The Sedona Conference, for instance, explains "Reasonably accessible sources generally include, but are not limited to, files **available** on or from a computer user's desktop, or on a company's network, **in the ordinary course of operation**." Exh. B, at 18 (emphasis added). These hard drives are not available in the ordinary course of operation because Ablaise would have to pay at least $10,800, and possibly $30,000, just to be able to view the data without a risk of permanently losing the data.

---

[8] Dow Jones references this Court's decisions in Peskoff v. Faber, 240 F.R.D. 26, 31 (D.D.C. 2007) and 244 F.R.D. 54, 63 (D.D.C. 2007). See Dow Jones' Mem. of Law at 7. But Peskoff is inapposite to this issue. As an initial matter, the Court did not address whether any specific media was "not reasonably accessible." Historic hard drives, in addition, were not at issue.

**B.    Dow Jones Has Not and Cannot Show Good Cause to Rebut the Presumption that Ablaise Does Not Have to Produce the Requested ESI.**

Because the ESI at issue is not reasonably accessible, Dow Jones cannot seek discovery of it unless Dow Jones proves good cause. The Federal Rules of Civil Procedure Advisory Committee (the Advisory Committee) promulgated seven factors relating to good cause.

1. The specificity of discovery requests;

2. The quantity of information available from other and more easily accessed sources;

3. The failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources;

4. The likelihood of finding relevant, responsive information that cannot be obtained from other more easily accessed sources;

5. Predictions as to the importance and usefulness of the further information;

6. The importance of the issues at stake in the litigation; and

7. The parties' resources.

Exh. A, at 49. This Court applied these factors in <u>Disability Rights Council of Greater Washington v. Washington Metropolitan Transit Authority</u>. 242 F.R.D. 139, 147-48 (D.D.C. 2007). But Dow Jones does not address any of the seven factors in its motion. Dow Jones, in fact, does not even mention "good cause" at any point—or the two-tier analysis in general. Quite simply, Dow Jones did not even attempt to show that good cause exists to make Ablaise produce the inaccessible ESI. Indeed, Dow Jones cannot. While the burden lies with Dow Jones, the factors, as applied below, show that good cause does not exist in this case.

1. <u>Specificity of Discovery Requests</u>

Dow Jones' discovery could not be more broad. Dow Jones' proposed order, for

instance, reads "Ablaise is ordered and directed, at its own expense, **to search its Electronically Stored Information ("ESI")** and produce any responsive, non-privileged documents found as a result of that search." Dow Proposed Order (Docket No. 42-8) (emphasis added). Dow Jones is not looking for anything specific, rather it just wants Ablaise to search its entire ESI dating back to 1994. This factor favors Ablaise. Cf. Disability Rights Council, 242 F.R.D. at 148 (finding plaintiffs request for emails of specific persons to favor search).

        2.      Quantity of information available from other and more easily accessed sources

Information exists in this case that is available from other sources. Dow Jones has already noticed depositions of the inventors, who can testify about events beginning in 1994. The file histories for the patents exist, detailing prior art. Additional witnesses, such as the attorney that prosecuted the patents, can be deposed. The patent itself is a contemporaneous document of what Ritchie and Bradshaw invented. Dow Jones, moreover, has built a corporate empire on its vanguard ability to find and produce publicly available information, such as the state of the art at the time of the invention. Dow Jones will not have difficulty in this case finding information relating to the validity of the patent—which Dow Jones bears the burden of proving by clear and convincing evidence. In short, while all information may not be available to Dow Jones, there is sufficient information available from more easily accessed sources.

        3.      Failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources

Ablaise has not failed to produce any information. This is not a spoliation issue. Cf. Disability Council Rights, 242 F.R.D. at 148 (explaining that no other information existed due to defendant's failure to impose a litigation hold). The ESI at issue relates to a time period well before anticipation of this or any other U.S. litigation. Indeed, the ESI at issue is from 1994-

1999, whereas Ablaise's first lawsuit in the United States commenced in 2005. Ablaise should be commended for preserving the information that it did—at its own significant cost—when it had no obligation to preserve this information at all. The invention, furthermore, in that it deals with the internet, is inherently paperless. It is, therefore, intuitive that any preserved information would be kept in an electronic format.[9] Ablaise and its inventors in no way failed to preserve or produce information that existed in other sources.

        4.    <u>Likelihood of finding relevant, responsive information that cannot be obtained from other more easily accessed sources</u>

No one knows whether any relevant information exists in the ESI. The ESI is inaccessible, and the exercise of restoring and reviewing it is the proverbial fishing expedition. Ablaise believes the majority of the data in question is either personal, or simply pertains to the business of Point4. While Dow Jones has failed to even address any of the factors that it is required to prove, Dow Jones' silence on this point is especially telling. At no point in its meet and confer or in its motion, has Dow Jones suggested any less intrusive means to determine the likelihood of finding relevant information in the ESI. Dow Jones, for instance, does not suggest sampling the ESI to test for relevance, refused to seek its own estimate for restoration, and did not seek discovery regarding this ESI before filing this motion. If Dow Jones had legitimate reason to believe that information "critical" to its defense existed, it certainly would have taken some, if not all, of these steps. But Dow Jones is on the quintessential fishing expedition and is seeking to drive up costs and delay this case from being tried to a jury.

---

[9] Contrary to Dow Jones' suggestion, Ablaise had no duty to preserve the ESI in paper documents. Dow's Mem. of Law, at 11-12. Indeed, as established above, it had no duty to preserve it at all. But even assuming a preservation obligation, there is absolutely no law, requirement, or obligation mandating that Ablaise keep everything in paper documents. <u>See, e.g.</u>, <u>Semsroth v. City of Wichita</u>, 239 F.R.D. 630, 635 & n.5 (D. Kan. 2006) (finding defendant's use of disaster recovery tapes reasonable, envisioned by the Federal Rules of Civil Procedure, and assigned no fault to defendant where defendant did not place material on inaccessible format to avoid production).

       5.      <u>Predictions as to the importance and usefulness of the further information</u>

Other than sheer hope, Dow Jones has no reason to believe there is important or useful information in the inaccessible data. As an initial matter, Ablaise explained through its meet and confer that Ablaise will not swear behind the U.K. filing date. The exact date for the conception and reduction to practice, therefore, is not "critical" to Dow Jones' infringement defense. With that issue removed, Dow Jones can point to no other information that it has reason to exist that may assist its defense.

Dow Jones expends no greater effort in its motion to show the potential usefulness of the information than its Introduction section, in which Dow Jones suggests hypothetical information that it hopes may exist and be relevant to its case. Dow Mem. of Law, at 2. But discovery is not a fishing expedition. <u>See, e.g.</u>, <u>Hardrick v. Legal Services Corp.</u>, 96 F.R.D. 617, 618 (D.D.C. 1983).

Dow Jones analogizes to a bunch of needles in haystacks, and states that Ablaise knows where they are. This analogy is false. Neither party knows if there are any needles. There may be none. Dow Jones simply cannot make any credible prediction of the importance or usefulness of the ESI.[10]

       6.      <u>Importance of the issues at stake in the litigation</u>

This issue looks to whether the litigation presents a unique or particularly novel issue. <u>See, e.g.</u>, <u>Zubulake</u>, 216 F.R.D. at 288. Like in <u>OpenTV v. Liberate Technologies</u>, "This is an infringement action. While the parties certainly have an interest in protecting their intellectual property rights, there is no indication that this case presents novel issues. As such, this factor is

---

[10] The Honorable James M. Rosenbaum's commentary on e-discovery aptly addresses Dow Jones' false haystack analogy. "Today we chase hard drives. We seek backups on disks and tapes. We resurrect data from dead devices and on forgotten storage materials. Where lawyers once looked for needles in haystacks, they now can find indefinite numbers of haystacks—regardless of whether they harbor needles at all. Computer forensics might resurrect an electronic Lazarus, but does he have anything to tell us?" <u>Exh. C</u>, at 27.

Case 1:06-cv-01014-JR    Document 43    Filed 12/10/2007    Page 16 of 20

neutral." 219 F.R.D 474, 479 (N.D. Cal. 2003).

### 7. Parties' Resources

The disparity between Dow Jones' resources and those of Ablaise is no more glaring than Goliath's size and strength compared to David's. Dow Jones is a multinational company that chose to sue Ablaise. Ablaise, in contrast, is made up of three people. This Court should not permit Dow Jones to attempt to financially bankrupt Ablaise just because Ablaise seeks to prevent Dow Jones from violating Ablaise's intellectual property. In addition to fundamental fairness and equity, the Federal Rules of Civil Procedure recognize this risk and seek to prevent a party—particularly when there is a disparity in resources—from bearing an unfair financial burden.

In assessing good cause, therefore, the Advisory Committee explains that courts should consider monetary considerations. Specifically, "A requesting party's willingness to share or bear the access costs may be weighed by the court in determining whether there is good cause." Exh. A, at 50. The Sedona Conference adds that this factor, while not dispositive, is relevant. Exh. B, Sedona Conference, Principle 2.c., at 18. But here, Dow Jones has flatly refused to pay a dime. Dow Jones, in fact, has not even sought an estimate to restore the ESI. Dow Jones' refusal to bear the extraordinary costs of its request underscores (1) the fact that it has no actual reason to believe any information exists to support one of its hypothetical defenses, and (2) that there is no good cause to rebut the presumption that the ESI at issue is not discoverable.

Even furthermore, the Advisory Committee makes clear that, in addition to the cost of restoring or making the data accessible, "the producing party's burdens in reviewing the information for relevance and privilege may weigh against permitting the requested discovery." Exh. A, at 50. Here, in addition to over $200,000 it would cost to restore the data, there would

- 16 -

MP3 20253768.1

be costs in the millions for Ablaise attorneys' to review this information for responsiveness, privilege, and segregating confidential personal information. The ESI at issue contains personal and business information for over five years. Dow has made no showing whatsoever to justify such extraordinary costs.

**II.     In Addition to The New Amendment Relating to E-Discovery, Traditional Principles of Proportionality Protect Ablaise From This Undue Burden and Disproportionate Cost.**

The new amendment relating to "not reasonably accessible" ESI is not the only Federal Rule of Civil Procedure that protects Ablaise from the undue burden and cost that Dow Jones seeks to impose. Indeed, the addition of Rule 26(b)(2)(B) does nothing to eliminate the traditional "rule of proportionality," under Rule 26(b)(2)(C). The Sedona Conference explains that the "rule of proportionality" is particularly important to ESI. "The proportionality standard of Rule 26(b)(2)(C) requires a balancing of the need for discovery with the burdens imposed and is particularly applicable to electronic discovery." Exh. B, Sedona Conference, Principle 2.b., at 17. And the Advisory Committee notes that "The limitations of Rule 26(b)(2)(C) continue to apply to all discovery of electronically stored information, including that on reasonably accessible electronic sources." Exh. A, at 50. Rule 26(b)(2)(C) specifically provides that discovery shall be limited if "the burden or expense of the proposed discovery outweighs its likely benefit." The Court makes this determination based on whether the burden or expense of the proposed discovery outweighs its benefit, as balanced by the following factors: (1) the needs of the case, (2) the amount in controversy, (3) the importance of the issues at stake in the action, and (4) the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

These factors are largely discussed above in section I.B and, specifically, the resources of the parties and the importance of the issues at stake. Ablaise's arguments are incorporated herein

for this analysis. Regarding the needs of the case, this controversy should not, like it did in Peskoff v. Faber, stall this case. See 244 F.R.D. 54, 59 (D.D.C. 2007). This case needs to progress forward and have a jury decide the merits. The amount in controversy is not established, as expert discovery has not commenced. Needless to say, this is a multi-million dollar case. But the search for and production of the ESI at issue is also a multi-million dollar endeavor. Before any of the data at issue can be reviewed, it must be professionally restored at a cost of over $200,000. The cost of reviewing the data for privilege, responsiveness, and private personal information would be exponentially higher. Exh. B, Sedona Conference Principle 2.b., at 17 (explaining that "the resources required to review documents for relevance, privilege, confidentiality, and privacy should be considered in any calculus of whether to allow discovery, and, if so, under what terms."). And there is no certainty that any responsive information will even be found.

      The only importance of the discovery to this litigation is Dow Jones' hope that it will find something to qualify as a defense to its infringement. But theoretical hope is not enough to justify a full scale search. See McPeek v. Ashcroft, 212 F.R.D. 33, 35 (D.D.C. 2003) ("There is a theoretical possibility that [relevant] data exists on backup tapes but I have previously rejected the notion that the mere possibility that data exists justifies forcing the government to search backup tapes irrespective of the cost."). Indeed, Dow Jones has no reason to believe that any relevant information establishes or supports any of its defenses. This is not like the situation in Peskoff, therefore, where previous information already produced establishes the inference that "additional similar information warrants further judicial action." Peskoff, 244 F.R.D. at 59-60. Here, no one knows if any relevant information is on the load of ESI. And even if there was, there is no way of knowing if that information would be favorable to Ablaise, Dow Jones, or

simply be neutral.

This Court, moreover, considered the additional fact of whether a party would have to search data that it had a duty to preserve. See id. at 62. This Court explained, for instance, that the cost of searching for information preserved before anticipation of litigation may not be justified under Rule 26(b)(2)(C). See id. As explained above, Ablaise had no duty to preserve the ESI from 1994-1999. This fact, therefore, weighs in favor of protecting Ablaise from searching the mass of ESI from that time period.

In short, the rule of proportionality protects Ablaise from Dow Jones' fishing expedition, especially when Dow Jones is fishing in an ocean of nine terabytes of data. Under these circumstances, the burden and cost outweigh the potential benefit of the discovery. But Ablaise is not even taking the position that the discovery should not be had. Ablaise's position all along has been that Dow Jones can inspect all of this information, as long as it bears the cost. This is particularly reasonable when it comes to the hard drives. Dow Jones, specifically, requested to inspect the hard drives. As such, it is inconceivable that Dow Jones is complaining that Ablaise offered to make them available for inspection.

## **Conclusion**

For the foregoing reasons, Ablaise respectfully requests that this Court schedule an oral hearing on this motion and deny Dow Jones' motion to compel in full.

Dated:  December 10, 2007          Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**


By:   _s/ Patrick M. Arenz_____

By:   _s/ Eric S. Jackson_____

    Ronald J. Schutz
    Jake H. Holdreith
    Eric S. Jackson #446657
    Cyrus A. Morton
    Patrick M. Arenz

    2800 LaSalle Plaza
    800 LaSalle Avenue
    Minneapolis, MN  55402-2015
    Ph:  (612) 349-8500
    Fx:  (612) 339-4181

AND

    Amy S. Owen #411601
    Ben Selan #495232
    COCHRAN & OWEN, LLC
    8000 Towers Crescent Drive, Suite 160
    Vienna, VA 22182
    Ph: (703) 847-4480
    Fx: (703) 847-4499

**ATTORNEYS FOR DEFENDANTS'
ABLAISE LTD. AND GENERAL INVENTIONS
INSTITUTE A, INC.**