## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DOW JONES & COMPANY, INC. | ) | |
| 200 Liberty Street | ) | |
| New York, New York 10281, | ) | **Civil Action No. 1:06CV01014** |
| | ) | |
| Plaintiff, | ) | **Judge James Robertson** |
| | ) | |
| v. | ) | |
| | ) | |
| ABLAISE LTD. ("Ablaise") | ) | |
| 40 Queen Anne Street | ) | **ORAL HEARING REQUESTED** |
| London W1G 9EL | ) | |
| United Kingdom | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GENERAL INVENTIONS | ) | |
| INSTITUTE A, INC., ("GIIA") | ) | |
| Craigmuir Chambers | ) | |
| P.O. Box 71 | ) | |
| Town Road | ) | |
| Tortola, British Virgin Islands, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| DOW JONES REUTERS | ) | |
| BUSINESS INTERACTIVE, LLC | ) | |
| 200 Library Street | ) | **Civil Action No. 1:06CV01015** |
| New York, New York 10281, | ) | |
| | ) | **Judge James Robertson** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABLAISE and GIIA, | ) | |
| | ) | **ORAL HEARING REQUESTED** |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

### Declaration of Jake M. Holdreith

I, Jake M. Holdreith, declare as follows:

    1.  I am a partner at the law firm of Robins, Kaplan, Miller & Ciresi, L.L.P.  I represent

Ablaise Ltd. in this matter.

2.  I had a conference call with Steven Lieberman on November 16, 2007 regarding Ablaise's Responses to Dow Jones' First Set of Requests for Production.  The call specifically addressed Ablaise's position regarding electronically stored information that was not reasonably accessible.  During the call I explained paragraphs 3 through 9 to Mr. Lieberman.

3.  Ablaise had retained various media that had stored information relating to Point4 from 1994 to 1999.  The data on the media could not be reviewed.  The back-up tapes which comprised the majority of the media were disaster recovery back-up tapes and could not be accessed.  The back-up tapes also were not catalogued or indexed.

4.  The media separate from the back-up tapes also could not be readily accessed without risking losing or damaging the data.  I explained Ablaise's concern that Ablaise could face spoliation issues in this or related litigation if Ablaise accessed this media and the data became damaged or lost.

5.  Ablaise does not know what information it has or where it could be found on any of the media at issue.

6.  Ablaise was not hiding any information or refusing to produce any information.  Dow Jones is free to inspect the media subject to a protocol to protect the integrity of the media at Dow Jones' cost and an agreed upon procedure to protect privilege and personal information.

7.  Dow Jones did not have to travel to the U.K. to inspect the media.  If Mr. Lieberman preferred, Dow Jones could retain a consultant in the U.K. to image the media and review the image in the United States.  I explained that Ablaise would not transport the

media due to the risk that the media would become physically damaged.

8. Ablaise would not seek to swear behind the U.K. filing date. I also stated that Ablaise would not seek to rely on any documents from the inaccessible media to support its case.

9. Dow Jones has not contacted Ablaise to set-up a time to inspect the hard drives that Dow Jones requested in Dow Jones' First Set of Requests for Production Number 27.

10. Attached as Exhibit A is a true and correct copy of excerpts from the Report of the Civil Rules Advisory Committee, dated May 27, 2005.

11. Attached as Exhibit B is a true and correct copy of excerpts of The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production (2nd ed. June 2007).

12. Attached as Exhibit C is a true and correct of the article Death of E-Discovery, authored by the Honorable James M. Rosenbaum, which appeared in *The Federal Lawyer* (July 2007).

I declare under the penalty of perjury and the laws of the District of Columbia that the foregoing is true and correct to the best of my knowledge.

Dated this 10th day of December, 2007.         _____s/Jake M. Holdreith_____
                                                Jake M. Holdreith

# EXHIBIT A

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE

OF THE

JUDICIAL CONFERENCE OF THE UNITED STATES

WASHINGTON, D.C. 20544

**DAVID F. LEVI**
CHAIR

**PETER G. McCABE**
SECRETARY

**CHAIRS OF ADVISORY COMMITTEES**

**SAMUEL A. ALITO, JR.**
APPELLATE RULES

**THOMAS S. ZILLY**
BANKRUPTCY RULES

**LEE H. ROSENTHAL**
CIVIL RULES

**SUSAN C. BUCKLEW**
CRIMINAL RULES

**JERRY E. SMITH**
EVIDENCE RULES

To:             **Honorable David F. Levi, Chair, Standing**
                **Committee on Rules of Practice and Procedure**

From:           **Honorable Lee H. Rosenthal, Chair, Advisory Committee on the**
                **Federal Rules of Civil Procedure**

Date:           **May 27, 2005**

Re:             **Report of the Civil Rules Advisory Committee**

### Introduction

The Civil Rules Advisory Committee held three hearings in 2005 on proposed rules amendments published for comment in August 2004. The hearings were held on January 12 in San Francisco, January 28 in Dallas, and February 11 and 12 in Washington, D.C. The Committee met at the Administrative Office of the United States Courts on April 14-15, 2005. Draft minutes of the April 2005 meeting are attached. Summaries of the written comments and testimony presented at the hearings are also provided with the several recommendations of proposed rule amendments for adoption.

Parts I and II present action items. Part I recommends transmission for approval of amendments to several rules. Rules 5(e) and 50(b) come first. The next set of rule amendments is a comprehensive package addressing discovery of electronically stored information, including revisions of Rules 16, 26, 33, 34, 37, and 45, as well as Form 35. The last set of rule amendments recommended for approval is a new Supplemental Rule G governing civil forfeiture actions; this package includes conforming changes to other Supplemental Rules, including the title and Rules A, C, and E. Part I includes a conforming amendment to Rule 26(a)(1) that was published with Rule G and conforming amendments to Rules 9(h) and 14 and 26(a)(1)(E) that are recommended for adoption without publication. For each of the four categories of rule amendments recommended for approval, these materials set out a brief introductory discussion, followed by the text of the proposed rule amendment and Committee Note and a summary and explanation of the changes made since publication.

Part II recommends publication for comment of a new Rule 5.2, the Civil Rules version of the E-Government Act rules. The Appellate, Bankruptcy, and Criminal Rules Advisory Committees have made similar recommendations.

Part III presents information items, briefly noting a few of the projects on the agenda for future work.

42                          FEDERAL RULES OF CIVIL PROCEDURE

### ii.  Discovery Into Electronically Stored Information that is
### Not Reasonably Accessible:  Rule 26(b)(2)

### Introduction

The Rule 26(b)(2)(B) proposal authorizes a party to respond to a discovery request by identifying sources of electronically stored information that are not reasonably accessible because of undue burden or cost.  If the requesting party seeks discovery from such sources, the responding party has the burden to show that the sources are not reasonably accessible.  Even if that showing is made, the court may order discovery if — after considering the limitations established by present Rule 26(b)(2) — the requesting party shows good cause.  The court may specify conditions for the discovery.

Several changes have been made in the rule text to express more clearly the procedure established by the published proposal.   The Committee Note is revised to describe more clearly the problems that the rule addresses.  The changes both in rule text and Note draw from a large body of public testimony and comments that suggested better ways to implement the proposed procedure without changing the procedure established by the published language.

The proposed rule has frequently been referred to as a "two-tier" system.  It responds to distinctive problems encountered in discovery of electronically stored information that have no close analogue in the more familiar discovery of paper documents.   Although computer storage often facilitates discovery, some forms of computer storage can be searched only with considerable effort.  The responding party may be able to identify difficult-to-access sources that may contain responsive information, but is not able to retrieve the information — or even to determine whether any responsive information in fact is on the sources — without incurring substantial burden or cost.  The difficulties in accessing the information may arise from a number of different reasons primarily related to the technology of information storage, reasons that are likely to change over time.  Examples from current technology include back-up tapes intended for disaster recovery purposes that are often not indexed, organized, or susceptible to electronic searching; legacy data that remains from obsolete systems and is unintelligible on the successor systems; data that was "deleted" but remains in fragmented form, requiring a modern version of forensics to restore and retrieve; and databases that were designed to create certain information in certain ways and that cannot readily create very different kinds or forms of information.  Such difficulties present particular problems for discovery.  A party may have a large amount of information on sources or in forms that may be responsive to discovery requests, but would require recovery, restoration, or translation before it could be located, retrieved, reviewed, or produced.  At the same time, more easily accessed sources — whether computer-based, paper, or human — may yield all the information that is reasonably useful for the action.  Lawyers sophisticated in these problems are developing a  two-tier practice in which they first sort through the information that can be provided from easily accessed sources and then determine whether it is necessary to search the difficult-to-access sources.

FEDERAL RULES OF CIVIL PROCEDURE                    43

In many circumstances, the two-tier approach will be worked out by negotiation. The Rule 26(b)(2)(B) amendment expressly incorporates the better practice as the method for judicial control when the parties cannot resolve the problem on their own. The amendment builds on the two-tier structure of scope of discovery defined in Rule 26(b)(1) and applies this structure to discovery of electronically stored information. The proposed rule recognizes a distinctive, recurring problem that electronically stored information presents for discovery and builds on the existing rules to facilitate judicial supervision when it is necessary to calibrate discovery to a particular case.

Much of the criticism during the public comment period focused on specific drafting problems in the published rule, including a lack of clarity in the term "not reasonably accessible," how that term and the "good cause" showing related to the existing Rule 26(b)(2) proportionality limits, and how a party designation or a court finding that information is not reasonably accessible related to preservation obligations. The proposed rule and Note have been revised to respond to the concerns identified.

The published rule required a party to identify potentially responsive "information" that is not reasonably accessible. The problem, however, is that a responding party cannot identify information without actually searching and retrieving it. The revised rule directs the party to identify the sources of information that may be responsive but is not reasonably accessible.

The published rule did not provide any guide to the considerations that bear on determining whether electronically stored information is not reasonably accessible. Many comments suggested that the test should be based on the burden and cost of locating, restoring, and retrieving potentially responsive information from the sources in which it is stored. The revised rule incorporates this test, which reflects the common understanding of the published proposal. The responding party may identify sources containing potentially responsive information that is not reasonably accessible "because of undue burden or cost."

Once the responding party has identified a source of information that is not reasonably accessible, the published rule provided for a motion to compel discovery. The revision recognizes that the responding party may wish to resolve the issue by moving for a protective order. Among the reasons that may lead a responding party to raise the issue is to resolve whether, or the extent to which, it must preserve the information stored on the difficult-to-access sources until discoverability is resolved.

A finding that the responding party has shown that a source of information is not reasonably accessible does not preclude discovery; the court may order discovery for good cause. Many comments suggested that the "good cause" standard seemed to contemplate the limitations identified by parts (i), (ii), and (iii) of present Rule 26(b)(2). The revised text clarifies the "good cause" showing by expressly referring to consideration of these limitations.

44                           FEDERAL RULES OF CIVIL PROCEDURE

The Committee Note is revised extensively to provide a clearer description of the two-tier procedure.  It recognizes that in some cases a single proceeding may suffice both to find that a source is not reasonably accessible and also to determine whether good cause nonetheless justifies discovery and to set any conditions that should be imposed.  But it also recognizes that proceedings may need to be staged if focused discovery is necessary to determine the costs and burdens in obtaining the information from the sources identified as not reasonably accessible, the likelihood of finding responsive information on such sources, and the value of the information to the litigation.  In such circumstances, a finding that a source is not reasonably accessible may lead to further proceedings to determine whether there is good cause to order limited or extensive searches and the production of information stored on such sources.

The proposed amendment is modest.  The public comments and testimony confirmed that parties conducting discovery, particularly when it involves large volumes of information, first look in the places that are likely to produce responsive information.  Parties sophisticated in electronic discovery first look in the reasonably accessible places that are likely to produce responsive information.  On that level, stating in the rule that initial production of information that is not reasonably accessible is not required simply recognizes reality.  Under proposed Rule 26(b)(2), this existing practice would continue; parties would search sources that are reasonably accessible and likely to contain responsive, relevant information, with no need for a court order.  But in an improvement over the present practice, in which parties simply do not produce inaccessible electronically stored information, the amendment requires the responding party to identify the sources of information that were not searched, clarifying and focusing the issue for the requesting party.  In many cases, discovery obtained from accessible sources will be sufficient to meet the needs of the case.  If information from such sources does not satisfy the requesting party, the proposed rule allows that party to obtain additional discovery from sources identified as not reasonably accessible, subject to judicial supervision.

One criticism leveled against the proposal is that it allows the responding party to "self-designate" information not produced because it is not reasonably accessible.  All party-managed discovery and privilege invocation rests on "self-designation" to some extent.  That is happening now, without the insights for the requesting party that the identification requirement provides.  The responding party must disclose categories and types of sources of potentially responsive information that are not searched, enabling the requesting party to decide whether to challenge that designation.

Two other areas of concern were expressed during the comment period.  One is the relationship to preservation.  A second, related concern is that this proposal would lead corporations to make information inaccessible in order to frustrate discovery.  As to the first concern, the Note is revised to clarify that the rule does not undermine or reduce common-law or statutory preservation obligations.  The Committee Note includes a reminder that a party may be obliged to preserve information stored on sources it has identified as not reasonably accessible, but in keeping with the approach taken in proposed Rule 37(f) does not attempt to state or define a preservation obligation. As to the second

FEDERAL RULES OF CIVIL PROCEDURE                    45

concern, many witnesses and comments rejected the argument that the rule would encourage entities or individuals to "bury" information that is necessary or useful for business purposes or that regulations or statutes require them to retain.  Moreover, the rule requires that the information identified as not reasonably accessible must be difficult to access by the producing party for all purposes, not for a particular litigation.  A party that makes information "inaccessible" because it is likely to be discoverable in litigation is subject to sanctions now and would still be subject to sanctions under the proposed rule changes.

### The Proposed Rule and Committee Note

### Rule 26(b)(2)

The Committee recommends approval of the following amendment:

### Rule 26.  General Provisions Governing Discovery; Duty of Disclosure

1              * * * * *

2    **(b) Discovery Scope and Limits.**  Unless otherwise limited by

3    order of the court in accordance with these rules, the scope of

4    discovery is as follows:

5              * * * * *

6        **(2)  Limitations.**

7            **(A)** By order, the court may alter the limits in these

8            rules on the number of depositions and interrogatories

9            or the length of depositions under Rule 30.  By order or

10           local rule, the court may also limit the number of

11           requests under Rule 36.

46          FEDERAL RULES OF CIVIL PROCEDURE

12      **(B)** A party need not provide discovery of electronically

13      stored information from sources that the party identifies

14      as not reasonably accessible because of undue burden or

15      cost.  On motion to compel discovery or for a protective

16      order, the party from whom discovery is sought must

17      show that the information is not reasonably accessible

18      because of undue burden or cost.  If that showing is

19      made, the court may nonetheless order discovery from

20      such sources if the requesting party shows good cause,

21      considering the limitations of Rule 26(b)(2)(C).  The

22      court may specify conditions for the discovery.

23      **(C)** The frequency or extent of use of the discovery

24      methods otherwise permitted under these rules and by

25      any local rule shall be limited by the court if it

26      determines that: (i) the discovery sought is

27      unreasonably cumulative or duplicative, or is obtainable

28      from some other source that is more convenient, less

29      burdensome, or less expensive; (ii) the party seeking

30      discovery has had ample opportunity by discovery in

31      the action to obtain the information sought; or (iii) the

FEDERAL RULES OF CIVIL PROCEDURE          47

32          burden or expense of the proposed discovery outweighs

33          its likely benefit, taking into account the needs of the

34          case, the amount in controversy, the parties' resources,

35          the importance of the issues at stake in the litigation,

36          and the importance of the proposed discovery in

37          resolving the issues.  The court may act upon its own

38          initiative after reasonable notice or pursuant to a motion

39          under Rule 26(c).

40                              * * * * *

### Committee Note

**Subdivision (b)(2).**  The amendment to Rule 26(b)(2) is designed to address issues raised by difficulties in locating, retrieving, and providing discovery of some electronically stored information. Electronic storage systems often make it easier to locate and retrieve information.  These advantages are properly taken into account in determining the reasonable scope of discovery in a particular case.  But some sources of electronically stored information can be accessed only with substantial burden and cost. In a particular case, these burdens and costs may make the information on such sources not reasonably accessible.

It is not possible to define in a rule the different types of technological features that may affect the burdens and costs of accessing electronically stored information.  Information systems are designed to provide ready access to information used in regular ongoing activities. They also may be designed so as to provide ready access to information that is not regularly used.  But a system may retain information on sources that are accessible only by incurring substantial burdens or costs.  Subparagraph (B) is added to regulate discovery from such sources.

48          FEDERAL RULES OF CIVIL PROCEDURE

Under this rule, a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessible, subject to the (b)(2)(C) limitations that apply to all discovery. The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.

A party's identification of sources of electronically stored information as not reasonably accessible does not relieve the party of its common-law or statutory duties to preserve evidence. Whether a responding party is required to preserve unsearched sources of potentially responsive information that it believes are not reasonably accessible depends on the circumstances of each case. It is often useful for the parties to discuss this issue early in discovery. One factor that bears on the preservation obligation is whether the responding party has a reasonable basis for believing that discoverable information is only available from sources that are not reasonably accessible and not on other reasonably accessible sources.

The volume of — and the ability to search — much electronically stored information means that in many cases the responding party will be able to produce information from reasonably accessible sources that will fully satisfy the parties' discovery needs. In many circumstances the requesting party should obtain and evaluate the information from such sources before insisting that the responding party search and produce information contained on sources that are not reasonably accessible. If the requesting party continues to seek discovery of information from sources identified as not reasonably accessible, the parties should discuss the burdens and costs of accessing and retrieving the information, the needs that may establish good cause for requiring all or part of the requested discovery even if the information sought is not reasonably accessible, and conditions on obtaining and producing the information that may be appropriate.

If the parties cannot agree whether, or on what terms, sources identified as not reasonably accessible should be searched and

FEDERAL RULES OF CIVIL PROCEDURE          49

discoverable information produced, the issue may be raised either by a motion to compel discovery or by a motion for a protective order. Before bringing a motion, the parties must confer under Rule 37. If the parties do not resolve the issue and the court must decide, the responding party must show that the identified sources of information are not reasonably accessible because of undue burden or cost. The requesting party may need discovery to test this assertion. Such discovery might take the form of requiring the responding party to conduct a sampling of information contained on the sources identified as not reasonably accessible; allowing inspection of such sources; or taking depositions of witnesses knowledgeable about the responding party's information systems.

Once it is shown that a source of electronically stored information is not reasonably accessible, the requesting party may still obtain discovery by showing good cause, considering the limitations of Rule 26(b)(2)(C) that balance the costs and potential benefits of discovery. The decision whether to require a responding party to search for and produce information not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case. Appropriate considerations may include (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

The responding party has the burden as to one aspect of the inquiry — whether the identified sources are not reasonably accessible in light of the burdens and costs required to search, retrieve, and produce whatever responsive information may be found. The requesting party has the burden of showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and producing the information. In some cases, the court will be able to determine whether the identified sources are not reasonably accessible and whether the requesting party has shown good cause for some or all

of the discovery, consistent with the limitations of Rule 26(b)(2)(C), through a single proceeding or presentation.  The good-cause determination, however, may be complicated because the court and parties may know little about what information the sources identified as not reasonably accessible might contain, whether it is relevant, or how valuable it may be to the litigation.  In such cases, the parties may need some focused discovery, which may include sampling of the sources, to learn what burdens and costs are involved in accessing the information, what the information consists of, and how valuable it is for the litigation in light of information that can be obtained by exhausting other opportunities for discovery.

The good-cause inquiry and consideration of the Rule 26(b)(2)(C) limitations are coupled with the authority to set conditions for discovery.  The conditions may take the form of limits on the amount, type, or sources of information required to be accessed and produced.  The conditions may also include payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible.  A requesting party's willingness to share or bear the access costs may be weighed by the court in determining whether there is good cause.  But the producing party's burdens in reviewing the information for relevance and privilege may weigh against permitting the requested discovery.

The limitations of Rule 26(b)(2)(C) continue to apply to all discovery of electronically stored information, including that stored on reasonably accessible electronic sources.

---

### Changes Made after Publication and Comment

This recommendation modifies the version of the proposed rule amendment as published.  Responding to comments that the published proposal seemed to require identification of information that cannot be identified because it is not reasonably accessible, the rule text was clarified by requiring identification of sources that are not reasonably accessible.  The test of reasonable accessibility was clarified by adding "because of undue burden or cost."

FEDERAL RULES OF CIVIL PROCEDURE    51

The published proposal referred only to a motion by the requesting party to compel discovery. The rule text has been changed to recognize that the responding party may wish to determine its search and potential preservation obligations by moving for a protective order.

The provision that the court may for good cause order discovery from sources that are not reasonably accessible is expanded in two ways. It now states specifically that the requesting party is the one who must show good cause, and it refers to consideration of the limitations on discovery set out in present Rule 26(b)(2)(i), (ii), and (iii).

The published proposal was added at the end of present Rule 26(b)(2). It has been relocated to become a new subparagraph (B), allocating present Rule 26(b)(2) to new subparagraphs (A) and (C). The Committee Note was changed to reflect the rule text revisions. It also was shortened. The shortening was accomplished in part by deleting references to problems that are likely to become antique as technology continues to evolve, and in part by deleting passages that were at a level of detail better suited for a practice manual than a Committee Note.

The changes from the published proposed amendment to Rule 26(b)(2) are set out below.

* * * * *

52          FEDERAL RULES OF CIVIL PROCEDURE

**Rule 26.  General Provisions Governing Discovery; Duty of Disclosure\***

1    **(b) Discovery Scope and Limits.**  Unless otherwise limited by

2    order of the court in accordance with these rules, the scope of

3    discovery is as follows:

4                                    * * * * *

5        **(2) Limitations.**

6                                    * * * * *

7            **(B)** A party need not provide discovery of

8            electronically stored information <u>from sources</u> that

9            the party identifies as not reasonably accessible

10           <u>because of undue burden or cost</u>. On motion ~~by the~~

11           ~~requesting party~~ <u>to compel discovery or for a</u>

12           <u>protective order</u>, the ~~responding~~ party <u>from whom</u>

13           <u>discovery is sought</u> must show that the information

_____

*Changes from the proposal published for public comment shown by double-underlining new material and striking through omitted matter.

FEDERAL RULES OF CIVIL PROCEDURE          53

is not reasonably accessible <u>because of undue</u> <u>burden or cost</u>.  If that showing is made, the court may <u>nonetheless</u> order discovery ~~of the information~~ <u>from such sources</u> ~~for~~ <u>if the requesting party shows</u> good cause<u>, considering the limitations of Rule 26(b)(2)(C)</u>.~~and~~ The court may specify ~~terms and~~ conditions for the discovery.

**(C)**  . . . . ~~A party need not provide discovery of electronically stored information that the party identifies as not reasonably accessible.  On motion by the requesting party, the responding party must show that the information is not reasonably accessible.  If that showing is made, the court may order discovery of the information for good cause and may specify terms and conditions for such discovery.~~

# EXHIBIT B

THE SEDONA CONFERENCE® WORKING GROUP SERIES



# THE SEDONA PRINCIPLES:
## SECOND EDITION

*Best Practices Recommendations & Principles for Addressing Electronic Document Production*

A Project of The Sedona Conference®
Working Group on Electronic Document
Retention & Production (WG1)

JUNE 2007



Copyright © 2007, The Sedona Conference®

**2.      When balancing the cost, burden, and need for electronically stored information, courts and parties should apply the proportionality standard embodied in Fed. R. Civ. P. 26(b)(2)(C) and its state equivalents, which require consideration of the technological feasibility and realistic costs of preserving, retrieving, reviewing, and producing electronically stored information, as well as the nature of the litigation and the amount in controversy.**

### Comment 2.a.          Scope of reasonable inquiry

The traditional approach to preserving and producing paper documents has been to undertake a good faith effort to identify sources and locations that are reasonably likely to contain relevant information and to advise custodians to preserve potentially relevant information. This is followed by employing reasonable steps to gather and produce documents, after reviewing them for privilege, trade secrets, confidential information or other appropriate bases for non-production.

A similar approach applies to efforts to identify, preserve, and produce relevant information in electronic format.  The fact that the information is in a different form does not alter the principle or place a new or greater discovery obligation upon litigants with relevant electronically stored information merely because of the increased volume of potential information involved.  Instead, litigants should rely on these traditional foundations for good faith compliance with discovery obligations and employ the unique capabilities of computer tools to assist in identifying, preserving, retrieving, reviewing, and producing relevant electronically stored information and documents.

*For further discussion of the requirements for the preservation of electronically stored information, see Principle 5, infra. See also Principle 8, which suggests practical distinctions in regard to production of electronically stored information based on the methods and characteristics of its storage.*

## RESOURCES AND AUTHORITIES

Lee H. Rosenthal, *A Few Thoughts on Electronic Discovery After December 1, 2006,* 116 Yale L.J. Pocket Part 167 (2006).

Shira A. Scheindlin and Jonathan M. Redgrave, *Discovery of Electronic Information, in 2 Bus. & Commercial Litig. in Fed. Courts,* Ch. 22, (Robert L. Haig ed., 2005 & Supp. 2006).

### Comment 2.b.          Balancing need for and cost of electronic discovery

The proportionality standard of Rule 26(b)(2)(C) requires a balancing of the need for discovery with the burdens imposed and is particularly applicable to electronic discovery.  Among the factors pertinent to electronic discovery are: (a) large volumes of data; (b) data stored in multiple repositories; (c) complex internal structures of collections of data and the relationships of one file to another; (d) data in different formats and coding schemes that may need to be converted into text to be reviewed; and (e) frequent changes in information technology. Understanding and generally quantifying these often technical factors are necessary for parties and the court to make reasoned judgments regarding going forward with or limiting discovery.

Electronic discovery burdens should be proportional to the amount in controversy and the nature of the case. Otherwise, transaction costs due to electronic discovery will overwhelm the ability to resolve disputes fairly in litigation.

Costs cannot be calculated solely in terms of the expense of computer technicians to retrieve the data but must factor in other litigation costs, including the interruption and disruption of routine business processes and the costs of reviewing the information. Moreover, burdens on information technology personnel and the resources required to review documents for relevance, privilege, confidentiality, and privacy should be considered in any calculus of whether to allow discovery, and, if so, under what terms. In addition, the non-monetary costs (such as the invasion of privacy rights, risks to business and legal confidences, and risks to privileges) should be considered. Evaluating the need to produce electronically stored information often requires that a balance be struck between the burdens and need for electronically stored information, taking into account the technological feasibility and realistic costs involved.



The Advisory Committee emphasized the importance of the balancing process, quite apart from, and as the underpinning for, the other production limitations. Accordingly, a reference to Rule 26(b)(2)(C) was added to Rule 26(b)(2)(B), and the Committee Note was amended to state that "the limitations [of the rule] continue to apply to all discovery of electronically stored information, including that stored on reasonably accessible electronic sources." Many state courts apply equivalent concepts to reach similar results under existing state rules.

## RESOURCES AND AUTHORITIES

Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2008.1 (2d ed. 2006).

*McPeek v. Ashcroft,* 212 F.R.D. 33, 36 (D.D.C. 2003) (declining to order searches of backup tapes where plaintiff had not demonstrated a likelihood of obtaining relevant information).

### Comment 2.c.     Limits on discovery of electronically stored information from sources that are not reasonably accessible

Rule 26(b)(2)(B) explicitly limits initial discovery of electronically stored information to information from reasonably accessible sources, the so-called "first tier" of discovery. Reasonably accessible sources generally include, but are not limited to, files available on or from a computer user's desktop, or on a company's network, in the ordinary course of operation.

The converse is information that is "not reasonably accessible" because of undue burden or cost.  Examples of such sources may include, according to the Advisory Committee, backup tapes that are intended for disaster recovery purposes and are not indexed, organized, or susceptible to electronic searching; legacy data that remains from obsolete systems and is unintelligible on the successor systems; and data that was "deleted" but remains in fragmented form, requiring a modern version of forensics to restore and retrieve.

A party served with a request for production of electronically stored information from a source that it believes in good faith (a) may contain relevant information but (b) is not reasonably accessible, must identify that source but may object to searching or producing from it. The Rule requires an identification sufficiently detailed to allow the requesting party to evaluate the likelihood that such sources of electronically stored information contain non-duplicative, relevant information as well as the costs and burdens associated with searching or producing electronically stored information from those sources. Importantly, the Rules do not require the identification of all inaccessible sources of electronically stored information, but only those that the producing party believes in good faith may contain relevant, non-duplicative information.

If the parties are unable to reach agreement regarding discovery from such sources, a motion to compel may be brought. In the event of a dispute regarding accessibility, the responding party bears the burden of demonstrating undue burden or cost and may be required to show the specific costs and other elements of the burden. If the responding party meets its burden, the burden shifts to the requesting party to prove that the need for the discovery and the other factors of a "good cause" determination are present for part or all of the discovery requested. The court may permit sampling to assess potential relevance or allow discovery and require that electronically stored information from the data source at issue be produced under appropriate conditions, including the sharing or shifting of costs. The willingness of a requesting party to pay for the additional costs of access, while relevant, is not dispositive.

A producing party may also anticipate a request for production by affirmatively raising issues about its need to preserve or produce information by filing for a protective order that addresses those concerns. Rule 26(b)(2)(B) was revised to explicitly acknowledge that a producing party "may wish to determine its search and potential preservation obligations by moving for a protective order."  *See* Report of the Civil Rules Advisory Committee, May 27, 2005 (rev. July 25, 2005) *available at* http://www.uscourts.gov/rules/reports/st07-2005.pdf.



*For a discussion of the limits of preservation efforts, including those for electronically stored information that is not reasonably accessible, but is reasonably likely to contain potentially relevant information,* see *Principle 5. For a discussion of backup tapes,* see *Principle 8. For a discussion of cost shifting in electronic discovery,* see *Principle 13.*

## RESOURCES AND AUTHORITIES

Report of the Civil Rules Advisory Committee, May 27, 2005 (rev. July 25, 2005), *available at* http://www.uscourts.gov/rules/reports/st09-2005.pdf.

Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2008.2 (2nd ed. 2006).

Conference of Chief Justices, *Guidelines for State Trial Courts Regarding Discovery of Electronically-Stored Information, Guideline 1(B)* (August, 2006) (defining "accessible" information as "electronically-stored information that is easily retrievable in the ordinary course of business without undue cost and burden").

Tex. R. Civ. P. 196.4 (responding party must produce the electronic or magnetic data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business).

Thomas Y. Allman, *The Impact of the Proposed Federal E-Discovery Rules,* 12 Rich. J.L. & Tech. 13 (2006).

Hon. Anthony J. Battaglia, *Dealing with Electronically Stored Information: Preservation, Production, and Privilege,* 53 Fed. Law. 26 (May 2006).

Kenneth J. Withers, *Electronically Stored Information: The December 2006 Amendments to the Federal Rules of Civil Procedure,* 4 Nw. J. Tech. & Intell. Prop. 171 (2006), *available at* http://www.law.northwestern.edu/hournals/njtip/v4/n2/3.

*Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 319-320 n.61 (S.D.N.Y. 2003) (*"Zubulake I"*) (noting that consideration of cost-shifting is appropriate where stored data is not in a "readily useable" format, such as backup tapes) (noting that Sedona Principles 8 and 9 recognize the distinction between "active data" and backup tapes in a manner very similar to the test employed in the instant case).

### *Comment 2.d. Need to coordinate internal efforts*

Decisions regarding the preservation of electronically stored information should be a team effort, often involving counsel (both inside and outside), information systems professionals, end-user representatives, records and information management personnel, and, potentially, other individuals with knowledge of the relevant electronic information systems and how data is used, such as information security personnel. Parties may also use outside consultants to assist with this process. Such consultants may be included in team activities to the extent consistent with the protection of privileged communications.

The team approach permits an organization to leverage available resources and expertise in ensuring that the organization addresses its preservation and production obligations thoroughly, efficiently and cost-effectively. Furthermore, maintaining a team allows the organization to build a knowledge base about its systems and how they are used. The organization may identify a person or persons who will act as the organization's spokesperson or witness on issues relating to the production of electronically stored information. Of course, the size of the team and the distribution of responsibilities among team members will vary depending upon the size of the organization and the scope of litigation. In short, coordination of information, resources and effort is essential.

*For a discussion of the role and risks of counsel in regard to preservation and production of electronically stored information,* see *Comment 6f.*



8.    **The primary source of electronically stored information for production should be active data and information. Resort to disaster recovery backup tapes and other sources of electronically stored information that are not reasonably accessible requires the requesting party to demonstrate need and relevance that outweigh the costs and burdens of retrieving and processing the electronically stored information from such sources, including the disruption of business and information management activities.**

### Comment 8.a.        *Scope of search for active and purposely stored data*

The scope of a search for relevant electronically stored information must be reasonable. For example, potentially relevant information may be located or reside on local and network computers, laptop computers, servers, handheld or portable storage devices (such as PDAs and flash memory drives), archive and backup data tapes, cellular phones, voicemail systems, or closed-circuit television monitoring systems.

However, it is neither feasible nor reasonable to require that litigants immediately or always canvas all potential reservoirs of electronically stored information in responding to preservation obligations and discovery requests. Many locations or sources will contain duplicative or redundant information, and many others may contain massive amounts of information not relevant to the claims and defenses in the case.

Accordingly, litigants and courts must exercise judgment, made upon reasonable inquiry and in good faith, about the active and purposely stored data locations that should be subject to preservation efforts. If the producing party is aware (or reasonably should be aware) that specific relevant information can only be obtained from a particular source, that information or the source on which it is located should be preserved for possible production absent agreement of the parties or order of the court. The mere suspicion that a source may contain potentially relevant information is not sufficient to demand the preservation of that source "just in case." Rather, the appropriate standard should be to preserve information on and search sources where the producing party is reasonably likely to locate potentially relevant information not available from other available, searched sources.

Resorting to sources that are not reasonably accessible, while certainly possible under some circumstances, should be required only on a showing of good cause, with the requesting party bearing the burden to show good cause on a motion to compel or in a hearing on a protective order. Production from such less accessible sources is subject to meeting the balancing or proportionality standards set forth in Principle 2, *supra*.

*Illustration i.* A party seeking relevant emails demands a search of backup tapes and hard drives for deleted materials. No showing of special need or justification is made for the search. The request should be denied. Parties are not typically required to sequester and search the trash bin outside an office building after commencement of litigation; neither should they be required to preserve and produce deleted electronic information in the normal case. Production should primarily be from sources of active information which is arranged in a manner conducive to retrieval and storage.

*Illustration ii.* After a key employee leaves X Company ("X Co.") to work for a competitor, a suspiciously similar competitive product suddenly emerges from the new company. X Co. produces credible testimony that the former employee bragged about sending confidential design specifications to his new company computer, copying the data to a CD, and deleting the data so that the evidence would never be found. The court properly orders that, given the circumstances of the case, the requesting party has demonstrated the need for the computer to be produced for mirror image copying of its hard drive. If the defendant is not willing to undertake the expense of hiring its own reputable data recovery expert to produce all available relevant data, inspection of the computer's contents by an expert working on behalf of X Co. may be justified, subject to appropriate orders to preserve privacy, to protect data, and to prevent production of unrelated or privileged material. Under a showing of special need, with appropriate orders of protection, extraordinary efforts to restore electronic information could also be ordered.



*For a discussion of the limitations under the 2006 Amendments on initial discovery from sources that are not reasonably accessible because of undue burden or cost,* see *Comment 8.b.*

## RESOURCES AND AUTHORITIES

Conference of Chief Justices, *Guidelines for State Trial Courts Regarding Discovery of Electronically Stored Information,* Guideline 5 (Aug. 2006) (judges should first assess if the electronically stored information is discoverable and then balance the benefits and burdens of requiring discovery based on a multi-factor analysis rather than presumptions regarding accessible or active data).

ABA Civil Discovery Standards (1999) (rev. Aug. 2004) Standard 29(b)(iv) *available at* http://www.abanet.org/litigation/ discoverystandards/2004civildiscoverystandards.pdf (listing factors for a court to consider in deciding whether to limit discovery of Electronically Stored Information and allocate costs).

### Comment 8.b.          *Production from sources that are not reasonably accessible*

The 2006 Amendments to the Federal Rules limits the obligation to search and produce from sources of relevant electronically stored information that is not reasonably accessible due to undue burden or cost.  This limitation in Fed. R. Civ. P. 26(b)(2)(B) is a specific invocation of the proportionality rules embodied in Rule 26(b)(2)(C).

Whether a source is "reasonably accessible" does not solely depend on the technology required to access that information, but is more closely related to the costs and burdens involved in accessing and retrieving the information. The Advisory Committee gives, as examples from current technology, "backup tapes" intended for disaster recovery purposes that are often not indexed, organized, or susceptible to electronic searching; legacy data that remains from obsolete systems and is unintelligible on the successor systems; data that was "deleted" but remains in fragmented form requiring a modern version of forensics to restore and retrieve; and databases that were designed to create certain information in certain ways and that cannot readily create very different kinds or forms of information.

The "accessibility" limitation is similar to but different from the production limitation found in Principle 8, which also addresses the technical accessibility and the purpose of the storage, rather than simply the burdens and costs associated with access.

Rule 26(b)(2)(B) of the amended Federal Rules requires the producing party to identify by category or type any sources of relevant electronically stored information that it has identified as "not reasonably accessible." Specifically, this requires that if a party has determined that the only source of some relevant electronically stored information is one that is not reasonably accessible, then it must preserve that source, disclose it (with enough information so the other side can understand what is at issue), be ready to demonstrate why production of information is unduly burdensome or expensive, and, if possible, discuss these issues at the initial Rule 26(f) meet and confer sessions. This requirement should not be read as a mandate to list all sources of electronically stored information that are not searched, nor does it require a listing of such sources if a party has reasonably determined, in good faith, that the inaccessible source does not contain nonduplicative relevant information. However, a party may not deliberately make information inaccessible for the sole purpose of avoiding litigation discovery requests specific to a known case.

If the parties are unable to reach agreement as to the accessibility of specific sources of electronically stored information or the need to restore those sources for purposes of the dispute at issue, a motion to compel or for a protective order may be brought. This procedure is discussed in Comment 2.c.

*For discussion of the use of cost-shifting in electronic discovery,* see *Principle 13,* infra.



## RESOURCES AND AUTHORITIES

Report of the Civil Rules Advisory Committee May 27, 2005 (rev. July 25, 2005), C. 42, *available at* http://www. uscourts.gov/rules/reports/st09-2005.pdf. ("[t]he rule requires that the information identified as not reasonably accessible must be difficult to access by the producing party for all purposes, not for a particular litigation.  A party that makes information 'inaccessible' because it is likely to be discoverable in litigation is subject to sanctions now and would still be subject to sanctions under the proposed rule changes.").

Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2008.2 (2d ed. 2006).

Conference of Chief Justices, *Guidelines for State Trial Courts Regarding Discovery of Electronically-Stored Information, Guideline 1(a)* (Aug. 2006) (defining "accessible" information as "electronically-stored information that is easily retrievable in the ordinary course of business without undue cost and burden").

Thomas Y. Allman, *The Impact of the Proposed Federal E-Discovery Rules,* 12 Rich. J.L. & Tech. 13 (2006).

Hon. Anthony J. Battaglia, *Dealing with Electronically Stored Information: Preservation, Production, and Privilege,* 53 Fed. Law. 26 (May 2006).

Kenneth J. Withers, *Electronically Stored Information: The December 2006 Amendments to the Federal Rules of Civil Procedure,* 4 Nw. J. Tech. & Intell. Prop. 171 (2006), *available at* http://www..law.northwestern.edu/journals/njtip/v4/n2/3.

Tex. R. Civ. P. 194.6 ("[T]he requesting party must specifically request production of electronic or magnetic data and specify the form in which the requesting party wants it produced. The responding party must produce the electronic or magnetic data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business.").

*Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 319-20 n.61 (S.D.N.Y. 2003) (*"Zubulake I"*) (noting that consideration of cost-shifting is appropriate where stored data is not in a "readily usable" format, such as backup tapes; noting that Sedona Principles 8 and 9 recognize the distinction between "active data" and backup tapes in a manner very similar to the test employed in the instant case).

### *Comment 8.c.*        *Forensic data collection*

Intrusive access to desktop, server, laptop or other hard drives or media storage devices is sometimes ordered when key employees leave employment under suspicious circumstances, or if theft or misappropriation of trade secrets or confidential information may be involved. However, making forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence. While such an approach is clearly appropriate in some circumstances, it should not be required unless exceptional circumstances warrant the extraordinary cost and burden. When ordered, it should be accompanied by an appropriate protocol or other protective measures that take into account privacy rights, attorney-client privilege, and the need to separate out and ignore nonrelevant information. In some cases, it may be necessary, as an anticipatory matter, to meet certain preservation obligations by making or retaining copies of backup tapes or taking such steps as imaging the computer hard drives of departing employees, if appropriate. Such copies may best preserve all possibly relevant data.  If the parties anticipate such a need, the topic of forensic-level preservation and review should be addressed at the initial meet and confer sessions.

The 2006 amendments to the Federal Rules clarify that the right to test, sample or inspect electronically stored information or gain access to computer systems or hard drives is within the scope of a discovery request, but is subject to protection from undue intrusiveness and with due respect for burdens and issues of confidentiality and privacy.



**EXHIBIT C**

# The Death of E-Discovery

## By Hon. James M. Rosenbaum

**The December 2006 e-discovery rules are in effect. Predictions to the contrary notwithstanding, the Earth remains the third planet from the sun, and it appears the law of gravity may still be working. Some lawyers might not have expected this, especially those who listened to the tumult surrounding the new rules. In reality, e-discovery is turning into the Federal Rules of Civil Procedure's equivalent of the Y2K problem.**



Electronic discovery exists. It is, and will likely remain, a part of the modern lawyer's pre-trial repertoire. But the existence of e-discovery is not, and should not be allowed to become, the end of the world. Conversations with managers and companies providing e-discovery services already reveal a regularization and ordering in the process. This is entirely predictable and can be expected to continue. It is also a trend worth considering.

Electronic information seeped into the business world during the antediluvian period, probably in the mid-1960s. At that time, such information was held in proprietary systems that were run by in-house programmers. This was the era of "high priest" programmers, working in air-conditioned, raised-floor rooms, performing their ministrations on un-networked mainframes. The uninitiated, in the form of data-entry people, might input small quantities of information into these systems. In that environment there was little need for, and less interest in, e-discovery.

The sea change in office operations began in the mid-1980s, becoming a tsunami in the 1990s. Preprogrammed, networked personal computers (PCs) were the change agents. As high priest programmers faded into the sunset, access to a company's computers and information systems became a game anybody could play. In today's workplace, virtually all information is electronic. Once the desktop computer became the locus of commerce, communication, and information, e-discovery was spawned as its wicked stepchild.

This development had an effect on pre-trial discovery. At some point in the mid-1990s, almost any information, beyond participants' recollections (call them "depositions"), implicated some form of e-discovery. This is no secret. Lawyers have been seeking and obtaining electronic discovery for decades.[1] The new consideration of electronic material in the Federal Rules is neither a surprise nor a significant change. The previous version of the rules alluded to and granted access to electronically stored information simply by referring to "data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form." Fed. R. Civ. P. 34(a).[2]

Prior to the 2006 rule changes, lawyers discovered electronic information by using the tools at hand: a personal request, a court order, or any one of a number of custom-crafted solutions.[3] As could be expected, individual lawyers' sophistication levels varied. This is understandable: lawyers' computer savvy is comparable to their familiarity with almost anything else. Some were better, some were worse.

Meanwhile, the workplace was transformed. E-mail became pervasive, the size of computer memory soared, the number of storage devices surpassed all imagining, and cellular telephones and personal digital assistants (PDAs) proliferated exponentially. Each addition multiplied the quantity of electronic information as well as the means whereby it might be accessed.

A stew began to simmer. There was more information to be gathered and more means of obtaining it. There were more places the information might be stored and more ways it could be manipulated or destroyed. As more

lawyers looked for that information, they stirred the soup. The pot simmered.

Then the heat was turned up: the market was flooded with seminars on the "dangers" of electronic discovery. Courts unleashed a flood of opinions outlining the risks of electronic perfidy and the accompanying risk to lawyers who might not be able to manage the beast.

Voilà! A new industry. E-discovery was perfect: it was complex; there was much to do and little product realized. It called for increasingly powerful computers and means of electronic sleuthing. There was much to teach and to be taught. The end product was hideously expensive and of questionable worth. And the electronic priesthood returned, this time transmuted from programming to electronic forensics.

The musical comedy "Little Shop of Horrors" gave us Audrey II, a plant that grew and grew, consuming everything in its reach.[4] But Audrey could not live forever. Today e-discovery—absent some calm reflection and some rational control—has become Audrey-at-law. The death of e-discovery is inevitable. And its loss will not be mourned.

The reality is that this is old wine in electronic bottles, as confirmed by e-discovery case law. After breathlessly describing the relevant technology or information storage mechanism, courts' rulings on the issue are stunningly predictable:

- If backup tapes are missing (read "a file is gone"), a court imposes penalties for misplacing them.[5]
- When a document-retention hold either has not been instituted or has been disregarded (read "files have been destroyed"), a court imposes penalties for losing the documents.[6]
- If a file has been deliberately erased (read "a document has been destroyed"), a court considers this spoliation—just as it has been since papyrus was invented—and imposes penalties.[7]
- In cases where a lawyer told a client to do something and the client didn't do it, and the lawyer didn't check up on the client, a court imposes penalties (giving a simple instruction isn't enough).[8]

Is any of this shocking? We may use hocus-pocus terms like "native format," "tiff" files, or "hard copy," but it remains the same old thing. Electronics have certainly multiplied the number of items stored—after all, nothing is ever really lost and virtually anything that's deleted can be recovered. There are now "copies" on every copier, file server, PDA, or PC. But most of the important items have usually been downloaded and probably printed out. Smoking guns usually attract attention when fired.

The death of e-discovery will come because, in its present form, its costs are rising exponentially and its benefits are often imperceptible. Lawyers can certainly conduct more discovery and gather more information. But does an electronic marathon dance give greater value to the one who pays for it? Even this question isn't new; the possibility that the 50th deposition might reveal a diamond has always existed. But how do you balance the value of that diamond against the incremental costs of depositions 15 through 49?

Today we chase hard drives. We seek backups on disks and tapes. We resurrect data from dead devices and on forgotten storage materials. Where lawyers once looked for needles in haystacks, they now can find infinite numbers of haystacks—regardless of whether they harbor needles at all. Computer forensics might resurrect an electronic Lazarus, but does he have anything to tell us?

Consider today's electronic rock star: metadata, which track the computer's internal workings. The myth is that metadata is analogous to an airplane cockpit's "black box" recordings. Surely the real truth must be there. But it's not. Metadata are easy to manipulate. Therefore, the information revealed may be true, but cannot be proven. (On a related note, one wonders who, exactly, is metadata's declarant? The author of the underlying document didn't write it. Maybe it's Bill Gates.)

E-discovery is certainly the new "big thing." But it is also a source of enormous cost to clients who must fund this enterprise. Even though data can be endlessly scoured, it is not at all certain that doing so generates anything of value.

Litigation and discovery require examination of records, memories (both human and electronic), and examination of documents in whatever form. There still remains, however, the sensible winnowing process that good lawyers have performed for years. At a certain point, lawyers and clients must decide if the costs and benefits of endless e-discovery are worth the incremental price.

When lawyers and clients realize that it's not productive to decant every bottle of old wine in the cellar in order to get one that's worth drinking, we will see the death of e-discovery. That day is not far off. And when it comes, electronic discovery will properly be seen as simply another arrow in a competent lawyer's quiver—neither unusually expensive nor particularly exciting. When lawyers simply obtain the information they need, from whatever source, there will be no need for e-discovery. **TFL**

*Hon. James M. Rosenbaum was appointed by President Ronald Reagan to the U.S. District Court of Minnesota on July 19, 1985. He became chief judge in 2001. Judge Rosenbaum graduated from the University of Minnesota law school in 1969. Following work as a VISTA attorney in Chicago and private practice in Minnesota, Judge Rosenbaum served as the U.S. attorney for Minnesota in 1981 until his appointment to the federal bench. Judge Rosenbaum has represented the Eighth Circuit on the Judicial Conference of the United States, including on its Executive Committee from 1999-2001. He wishes to thank his law clerk Karin Ciano, who knows and finds the law.*

**Endnotes**

[1]See, for example, *Anti-Monopoly Inc. v. Hasbro Inc.*, 1995 WL 649934, *2 (S.D.N.Y., Nov. 3, 1995) (unpublished) ("it is black letter law that computerized data is discoverable if relevant"); *Santiago v. Miles*, 121 F.R.D. 636, 639–640 (W.D.N.Y. 1988); *Adams v. Dan River Mills*

**Death of E-Discovery continued on page 37**

## Death of E-Discovery continued from page 27

continued from page 27

*Inc.*, 54 F.R.D. 220, 222 (W.D. Va. 1972).

[2]*See also* its Advisory Committee Note, 1970 Amendment (the amendment "makes clear" that Rule 34 "applies to electronic data compilations").

[3]*See, for example, Williams v. E.I. duPont de Nemours & Co.*, 119 F.R.D. 648, 651 (W.D. Ky. 1987) (imposing a protective order but allowing limited discovery at the requester's expense); *Dunn v. Midwestern Indemnity*, 88 F.R.D. 191, 197–198 (S.D. Ohio 1980) (scheduling evidentiary hearing on the burden of producing data on a computer's capabilities and requiring plaintiffs to comply with the protective order); *National Union Elec. Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1257, 1262 (E.D. Pa. 1980) (requiring the plaintiff to generate a computer-readable version of discovery materials at the defendant's expense and predicting that "by the year 2000 virtually all data will be stored in some form of computer memory").

[4]Howard Ashman and Alan Menken, "Little Shop of Horrors" (1982, as amended by Warner Bros. in 1986).

[5]*Compare Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 222 (S.D.N.Y. 2003) (*Zubulake IV*) (requiring the defendant to pay for a re-deposition of witnesses about e-mails lost because of failure to preserve backup tapes) and *Coleman (Parent) Holdings Inc. v. Morgan Stanley & Co. Inc.*, 2005 WL 674885, *9 (Fla. Cir. Ct., March 23, 2005) (unpublished) (granting partial default judgment as sanction for discovery violations relating in part to the search for backup tapes), *judgment for plaintiff reversed on other grounds*, 2007 WL 837221, *8 (Fla. App. 4th Dist., March 21, 2007), with *Reilly v. NatWest Markets Group Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (affirming the use of adverse inference instruction where the defendant was "at least" grossly negligent in misplacing files for months, and only days before trial, producing files with missing documents).

[6]*Compare Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 437 (S.D.N.Y. 2004) (*Zubulake V*) (adverse inference as an appropriate sanction for e-mails deleted in violation of litigation hold) with *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 559 (N.D. Cal. 1987) (monetary sanctions and additional discovery obligations imposed on the defendant and counsel in response to extensive destruction of potentially responsive documents).

[7]*Compare Zubulake V, id.* (imposing adverse inference instruction regarding content of deleted e-mails) with *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 553–554 (D. Minn. 1989) (imposing double attorneys' fees and costs for deliberate shredding of relevant documents).

[8]*Compare Zubulake V*, 229 F.R.D. at 433 ("a party cannot reasonably be trusted to receive the 'litigation hold' once and to fully comply with it without the active supervision of counsel") with *National Ass'n of Radiation Survivors*, 115 F.R.D. at 552 and 558 (counsel's procedure to send discovery requests to department heads without any followup "bordered on the anarchic").



# Memorials and Remembrances
# *Gift Program*

*With a tax-deductible gift to the Foundation of the Federal Bar Association, members of the legal profession, the public, business organizations, charitable trusts, or other foundations may create a memorial to a deceased person. Gifts may also be made in honor of someone, an anniversary, birthday, or any other occasion. Your gift helps fund educational and charitable programs that promote public understanding of the law and enhance the cause of justice.*

## Foundation of the Federal Bar Association
*Memorial/Remembrance Gift Program*

PLEASE DETACH AND MAIL THE COMPLETED FORM TO:
Foundation of the Federal Bar Association
2011 Crystal Drive, Suite 400, Arlington, VA 22202

*In Memory of*
_____

*Date of Death*
_____

*In Honor of*
_____

*Occasion*
_____

**Please send acknowledgment to:**

*Name*
_____

*Address*
_____

*City, State, Zip*
_____

**Donation made by:**

*Name*
_____

*Address*
_____

*City, State, Zip*
_____