**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DOW JONES & COMPANY, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 06-1014 (JR) |
| : | |
| ABLAISE LTD., *et al.*, : | |
| : | |
| Defendants. : | |
| _____ | |
| DOW JONES REUTERS BUSINESS : | |
| INTERACTIVE, LLC, d/b/a FACTIVA : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 06-1015 (JR) |
| : | |
| ABLAISE LTD., *et al.*, : | |
| : | |
| Defendants. : | |

**MEMORANDUM**

Ablaise, Ltd. owns U.S. Patent Nos. 6,961,737 ('737 patent) and 6,925,530 ('530 patent) -- two similar patents that describe a method for generating webpages based on user preferences. In 2006, Ablaise accused Dow Jones & Co., Inc. of infringing the patents and offered a licensing agreement. Dow Jones declined the offer and sued for a declaratory judgment that the patents were invalid and not infringed. Ablaise counterclaimed for infringement of both patents.

After a <u>Markman</u> hearing and a year of discovery, and during a period in which the parties were preparing motions that would address the validity or invalidity of the patents, Ablaise informed Dow Jones that it would "not be asserting any

infringement of the '530 patent in this lawsuit." Dkt. 72, Ex. A. Ablaise offered a covenant not to sue Dow Jones on the '530 patent if Dow Jones would dismiss its claim of invalidity. Id. Dow Jones demanded that Ablaise include News Corporation -- Dow Jones' parent company -- in the covenant. Id., Ex. B. When Ablaise balked at expanding its covenant to News Corporation, which had acquired Dow Jones after this suit was filed, Dow Jones refused to dismiss its invalidity claim.

Ablaise then moved to dismiss Dow Jones' claim of invalidity as to the '530 patent on the grounds that its proffer of a covenant not to sue Dow Jones for infringement of that patent divested this Court of subject matter jurisdiction over the invalidity claim. I denied the motion without prejudice on September 11, 2008. Hearing Tr., at 23. This memorandum explains that ruling.

## Analysis

Subject matter jurisdiction in a declaratory judgment suit depends on the existence of "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and the plaintiff bears the burden of proving the existence of such a controversy throughout the litigation. MedImmune, Inc. V. Genentech, Inc., 127 S.Ct. 764, 771 (2007). In a line of cases beginning with Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995), the Federal

Circuit has held that a covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any substantial controversy between the parties.  See Intellectual Property Development, Inc. v. TCI Cablevision of Calif., Inc., 248 F.3d 1333 (Fed. Cir. 2001); Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852 (Fed. Cir. 1999).[1]

In Fort James Corp. v. Solo Cup Co., 412 F.3d 1340 (Fed. Cir. 2005), the Federal Circuit carved out an exception to the Super Sack rule.  The trial court, following Super Sack, had dismissed the alleged infringer's claim that a patent was unenforceable when  -- after a jury found that the patent was not infringed  -- the patentee submitted a covenant not to sue on the patent.  Id. at 1344-45.  The Federal Circuit reversed the dismissal, writing:

> In Super Sack and its progeny, the patentee's covenant not to sue was filed prior to consideration or resolution of the underlying infringement claim.  In such circumstances, the promise not to sue obviated any

---

[1] Dow Jones claims that these cases are no longer good law because they rely on a test for determining jurisdiction that was rejected in MedImmune.  See 127 S.Ct. at 774 n.11.  But the Federal Circuit has subsequently cited Super Sack to uphold the dismissal of an invalidity claim for lack of jurisdiction.  See Benitec Australia, Ltd. v. Nucleonics, 495 F.3d 1340, 1346 (Fed. Cir. 2007); see also Crossbow Tech., Inc. v. YH Tech., 531 F. Supp. 2d 1117, 1120 (N.D. Cal. 2007) ("The Federal Circuit's decision in Nucleonics, however, clarifies that a covenant not to sue is still sufficient to divest a trial court of subject matter jurisdiction, even under the new MedImmune standard.").

>    reasonable apprehension that the declaratory judgment
>    plaintiff might have of being held liable for its acts
>    of infringement. . . . Here, however, the Post-Verdict
>    Covenant had no effect on Fort James' claim for
>    infringement, because the controversy had already been
>    resolved by the jury's verdict.

Id. at 1348.

Last year, the Federal Circuit distinguished the facts of its Fort James decision to reach a different result in Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340 (2007).  In Benitec, it found that a pretrial tender of a covenant not to sue ousted the trial court of subject matter jurisdiction over an infringement claim, because, unlike in Fort James, the covenant was tendered "before . . . the considerable effort connected [with trial] had taken place." Id. at 1347.  If Benitec's rule were applied formalistically here, where the parties have not submitted their summary judgment briefs (or had not, when I denied the Ablaise motion to dismiss), and where a trial date has not been set, the result would have to be the dismissal of Dow Jones' declaratory judgment claims as to the '530 patent.  The distinction Benitec draws between its own facts and those of Fort James, however, is an odd one, as Judge Dyk observed in his dissent, id. at 1355.  The before-trial vs. during-or-after-trial dichotomy is a mechanical rule that ignores the real world of patent litigation, in which the heaviest investment of litigation resources is made well before trial -- and made, indeed, with the

intent of resolving disputes, if possible, before the trial takes place.

In any event, I regard the Super Sack-Benitec rule as inapplicable to the case at bar, for what I believe are sound prudential reasons, and for reasons of the efficient utilization of the litigation resources of both bench and bar.  The situation is analogous to one in which a federal trial court may assert supplemental jurisdiction, see 28 U.S.C. § 1367(a).  The relationship between the two patents in these related cases is so close that the validity or invalidity of one may be said to form "part of the same case or controversy" as the other.  See Tr. at 9-10.  Ablaise's refusal to extend its covenant to Dow Jones' newly acquired parent, moreover, is a not-very-subtle indicator of Ablaise's intent to continue to assert the validity of its '530 patent wherever it can find the occasion to do so.  Indeed, Ablaise has asserted the '530 patent in at least nine other actions (including one currently before me, Ablaise, Ltd. v. Navteq Corp., No. 07-cv-1836), so resolving the validity of the patent will help move those cases forward.  See Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Foundation, 402 U.S. 313, 338 (1971) (emphasizing the importance of establishing the validity of a patent that has been asserted in a number of cases).

To permit Ablaise to pull its '530 patent out of these cases on the eve of the deadline for filing summary judgment motions -- after putting Dow Jones through a year of discovery on

the patent -- would be like rewarding Lucy for snatching the football away from Charlie Brown.[2]  As Hart and Wechsler put it in more formal terms:

> There is an important public interest in protecting the legal system against manipulation by parties, especially those prone to involvement in repeat litigation, who might contrive to moot cases that otherwise would be likely to produce unfavorable precedents.

Hart and Wechsler, The Federal Courts and the Federal System 204 (5th ed. 2003).

                                        JAMES ROBERTSON
                                   United States District Judge

---

[2] The analogy is admittedly imperfect.  Charlie Brown and Lucy were at least nominally on the same side, and Lucy didn't want to keep the ball -- she just didn't want Charlie Brown to have the satisfaction of kicking it.